## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

VISCOFAN USA, INC,

        Plaintiff,

  v.

        Case No. 08 C 02066

FLINT GROUP,

        Defendant.

## AGREED MOTION TO AMEND COMPLAINT WITHOUT PREJUDICE

Plaintiff Viscofan USA, Inc. ("Viscofan"), by and through counsel, submits this Agreed Motion to Amend Complaint Without Prejudice.   In support of its Motion, Viscofan states as follows:

1.     On February 6, 2008, Viscofan filed this action in the Circuit Court of Vermilion County, Illinois against Flint Group.

2.     On February 11, 2008, Flint Group was served with a Summons and Complaint.

3.     On or about March 10, 2008, Flint Group, through counsel, advised that Flint Ink Winschoten B.V. ("Flint Ink"), a Dutch company, was the proper corporate defendant. Counsel requested that Viscofan dismiss Flint Group from the case and file an amended complaint, naming Flint Ink as the defendant.  Flint Group's counsel represented that she would accept service on behalf of Flint Ink.  Viscofan subsequently agreed to dismiss Flint Group, without prejudice, and amend its complaint as requested.

4.     On or about March 11, 2008, Flint Group filed a Notice of Removal with this Court.

5.     On March 17, 2008, Flint Group moved to extend its time to respond to

Viscofan's complaint. The Court granted Flint Group's motion the same day.

6.    Pursuant to Federal Rule of Civil Procedure 15(a), Viscofan is entitled to amend its complaint as matter of course at any time before a responsive pleading has been served.

7.    Flint Group has not yet filed or served a responsive pleading.

8.    Viscofan seeks to file the attached Amended Complaint (Exhibit 1), which dismisses Flint Group and names Flint Ink as the defendant.

9.    The parties agree that Viscofan's decision to amend its complaint to dismiss Flint Group should be without prejudice to join it as a defendant at a later date, if the facts so require. Flint Group's counsel also agreed to accept service on behalf of Flint Ink.

WHEREFORE, Viscofan respectfully requests that the Court (1) grant its motion to amend its complaint without prejudice to join Flint Group as a defendant at a later date, if the facts so require, and (2) deem that Exhibit 1 has been filed and properly served on the Flint Ink Winschoten B.V.

Dated: March 26, 2008

VISCOFAN USA, INC.

By:        /s/ Steven H. Hoeft
                    One of Its Attorneys

Steven H. Hoeft, P.C. (IL Bar #1232290)
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606
Telephone:  (312) 984-7737
Facsimile:  (312) 984-7700

## <u>CERTIFICATE OF SERVICE</u>

I, Steven H. Hoeft, an attorney, hereby certify that I caused a true and correct copy of the foregoing AGREED MOTION TO AMEND COMPLAINT WITHOUT PREJUDICE to be served on the following individuals via the Court's Electronic Filing System this 26th day of March 2008:

Joann T. Angarola
JOHNSON & BELL LTD.
Suite 2700
33 West Monroe Street
Chicago, Illinois  60603

William D. Serritella
JOHNSON & BELL LTD.
Suite 2700
33 West Monroe Street
Chicago, Illinois  60603

  /s/ Steven H. Hoeft

Steven H. Hoeft, P.C. (IL Bar #1232290)
McDermott Will & Emery LLP
227 West Monroe Street
Chicago, Illinois 60606
Telephone:  (312) 984-7737
Facsimile:  (312) 984-7700

CHI99 4959674-1.063143.0021

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

VISCOFAN USA, INC,

    Plaintiff,

    v.

FLINT INK WINSCHOTEN B.V.,

    Defendant.

Case No. 08 C 02066

TRIAL BY JURY DEMANDED

## AMENDED COMPLAINT

Plaintiff VISCOFAN USA, INC., by and through its undersigned attorneys, for its

Amended Complaint against Defendant FLINT INK WINSCHOTEN B.V. states as follows:

1.    Plaintiff VISCOFAN USA, INC. ("VISCOFAN") makes and distributes artificial

meat casings.  VISCOFAN is a Delaware corporation, with operations in Alabama and Illinois.

On January 1, 2008, VISCOFAN merged with TEEPAK LLC, a limited liability company with

its principal place of business in Danville, Illinois.  TEEPAK also made and distributed artificial

casings for meat products.  VISCOFAN is the successor to the rights that TEEPAK asserts

herein.  VISCOFAN and TEEPAK are collectively referred to in this Amended Complaint as

"TEEPAK."

2.    Defendant FLINT INK WINSCHOTEN B.V. ("FLINT INK") is a citizen of the

Netherlands.  FLINT INK manufactures printing inks and pigments.  FLINT INK maintains its

headquarters in Winschoten, the Netherlands.  FLINT INK is a member of FLINT GROUP ,

which is headquartered in Luxembourg and has operations in more than 170 locations in North,

Central and South America, Europe, the Middle East, Africa, Australia, New Zealand, India and

the Pacific Rim.  At all relevant times, FLINT INK solicited sales and sold ink and ink-related

products to TEEPAK, a resident of Illinois.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over the parties and the subject matter of this action, because the claims asserted in this Amended Complaint arose out of acts and transactions that occurred in Illinois.  As described more fully below:

      a.    At all relevant times, TEEPAK was a resident of Illinois;

      b.    TEEPAK sent purchase orders to FLINT INK from its facility in Danville, Illinois;

      c.    FLINT INK shipped the ink to TEEPAK's facility in Danville, Illinois;

      d.    FLINT INK sent invoices for the ink to TEEPAK's facility in Danville, Illinois;

      e.    FLINT INK made telephone calls to and received telephone calls from TEEPAK's facility in Danville, Illinois;

      f.    FLINT INK sent correspondence  regarding the composition and quality of the ink to TEEPAK in Danville, Illinois;

      g.    the ink that TEEPAK purchased from FLINT INK was used in Illinois;

      g.    a FLINT GROUP North American account executive visited TEEPAK's facility in Danville, Illinois on behalf of FLINT INK to discuss the problems with the ink.

4.      Venue is proper here because TEEPAK resides in Danville and the transactions giving rise to the claims occurred here.

## FACTUAL BACKGROUND

5.      TEEPAK manufactures cellulose and fibrous meat casings at its plant in Danville, Illinois.  TEEPAK supplied red-dyed skinless casings to several customers that operate in the

Philippines including, among others, Mekeni Food Corporation ("Mekeni") and Purefoods.  At the request of these customers, TEEPAK printed product information on the casings using white ink specially suited for that purpose.

 6. In the Philippines, it is common for vendors to freeze cased sausages in the evening and thaw them in the morning each day until they are sold to the final customer.  The ink used on the casings must be able to withstand the resulting temperature changes.

 7. Before 1997, TEEPAK printed product information on its red-dyed skinless casings using an ink manufactured and sold by Sun Chemical.  Sun Chemical's ink proved to be unsatisfactory for use in the Philippines, because the ink flaked off of the casings when they were subjected to repeated freezing and thawing.

 8. In an effort to find an ink that would stay on the casings during the freeze-and-thaw cycles, TEEPAK contacted several ink manufacturers and tested numerous ink samples.

 9. In 1997, TEEPAK's Czechoslovakian sister facility recommended that TEEPAK try an ink manufactured in Vienna, Austria (the "Original Formula") by Gebr. Schmidt Druckfarben ("Schmidt"), a company which subsequently merged with FLINT INK.

 10. TEEPAK contacted Schmidt, explained its need for ink that could be used in the Philippines, and asked Schmidt for its help.  *See* May 2, 1997 Letter (attached as Exhibit A).  In response, Schmidt sent samples of the Original Formula to the Danville plant.

 11. TEEPAK tested the Original Formula, and found that it maintained its adhesive properties during the freeze-and-thaw process.

 12. As a result, TEEPAK contacted Schmidt to buy the Original Formula.  Initially, Schmidt offered to supply a different type of ink from its plant in Frankfurt, Germany, but TEEPAK refused the offer,  and explained to Schmidt that the Frankfurt ink was not suitable for use on casings sold in the Asian market.

13.    Schmidt thereafter agreed to sell the Original Formula to TEEPAK. TEEPAK and Schmidt entered into a series of contracts, pursuant to which Schmidt sold the Original Formula to TEEPAK for use on the Asian casings.

14.    TEEPAK used the Original Formula on red-dyed skinless casings sold to customers in Asia without incident for several years. The Original Formula was well suited for that purpose.

15.    In or about 2000, Schmidt began supplying an ink that was different from the Original Formula, without TEEPAK's knowledge. The new formula did not maintain its adhesive properties during the freeze-and-thaw process. When TEEPAK discovered that Schmidt had provided a different ink, it notified Schmidt of the problem, explained that the casings on which the ink was applied were subject to the freeze-and-thaw process in Asia and that the new formula was not suited for that use. *See* April 19, 2000 Email (attached as Exhibit B). TEEPAK requested that Schmidt resume selling the Original Formula. Schmidt agreed to make the Original Formula product for TEEPAK as a special order product.

16.    TEEPAK submitted approximately six purchase orders to Schmidt annually for the Original Formula. The purchase orders were issued from TEEPAK's facility in Danville, Illinois. Schmidt filled each order as requested and sold the Original Formula to TEEPAK. The Original Formula continued to work well for use in the Asian market.

17.    Upon information and belief, Schmidt merged with FLINT INK's European Operations in 2002. FLINT INK knew about the special purpose for which TEEPAK used the Original Formula, and they continued to sell TEEPAK the Original Formula.

18.    In the May of 2005, TEEPAK submitted a purchase order for the Original Formula to FLINT INK (the "May 2005 Purchase Order") (attached as Exhibit C) (copies of all purchase orders reflect the merger between Teepak and Viscofan). When the ink from FLINT

INK arrived at the Danville plant, the labels on the ink were different than the labels on the

Original Formula, and the identification numbers differed from those on the Original Formula.

TEEPAK learned that ink sent by FLINT INK in May 2005 had been manufactured at a plant in

the Netherlands, rather than the Austrian facility where the Original Formula had been

manufactured.

19.     When TEEPAK learned that the ink had been manufactured in the Netherlands,

TEEPAK contacted a FLINT GROUP North American account executive in Michigan and asked

about whether the ink (the "New Ink") it had received was still the Original Formula. The

FLINT GROUP North American account executive, acting on behalf of FLINT INK, represented

that the ink formula had not changed. As a result, and in reliance on the account executive's

representation, TEEPAK began using the New Ink.

20.     When TEEPAK applied the New Ink to the casings, the New Ink was more

difficult to apply. The New Ink dried faster than the Original Formula and it stuck to the plates

on the printing press and filled the analox rollers.

21.     TEEPAK notified a FLINT GROUP North American representative of the drying

problem. In response, the representative, acting on behalf of FLINT INK, recommended that

TEEPAK use a chemical agent to slow the drying process. The representative did not disclose

that there had been a change to the ink formula.

22.     TEEPAK followed the FLINT GROUP representative's recommendation to use a

chemical agent to slow the drying process, but continued to have problems applying the New

Ink. Among other things, TEEPAK was forced to apply solvent to the casing/plate interface

whenever the press stopped to avoid sticking problems, brush down the analox rollers every four

hours to remove ink buildup, and remove and clean the printing drum three to four times per

shift.  TEEPAK did not experience these problems with the Original Formula.  Despite these

manufacturing problems, however, the New Ink appeared to adhere to the casings.

23.    In reliance on FLINT INK's representations that the Original Formula had not

been modified, TEEPAK continued to purchase ink from FLINT INK.  TEEPAK submitted six

more purchase orders for the Original Formula on the following dates:  July 14, 2005 (attached

as Exhibit D); October 3, 2005 (attached as Exhibit E), November 3, 2005 (attached as Exhibit

F); August 9, 2006 (attached as Exhibit G); August 31, 2006 (attached as Exhibit H); and

September 28, 2006 (attached as Exhibit I) (collectively, the "Subsequent Purchase Orders").

FLINT INK accepted the Subsequent Purchase Orders and supplied TEEPAK with New Ink.

The ink that FLINT INK supplied in late 2005 and 2006 was difficult to apply.

24.    In the summer of 2006, TEEPAK received quality complaints from Mekeni and

Purefoods that ink was flaking and peeling off of the casings.  These customers submitted claims

for damages to TEEPAK, and TEEPAK began to investigate the claims.

25.    In the fall of 2006, TEEPAK conferred with John Kerscher, FLINT GROUP's

Midwest Regional Technical Service Manager, regarding the application problems and customer

complaints.  Mr. Kerscher sent TEEPAK suggestions regarding the additive specifications.  Mr.

Kerscher did not disclose that there had been a change in the ink formula.

26.    Throughout the fall of 2006, TEEPAK continued to receive complaints from its

customers.  In early 2007, TEEPAK received a claim for damages from Mekeni.  Unable to solve

the adhesion problem, TEEPAK stopped using FLINT INK's ink.

27.    In February 2007, TEEPAK contacted Charlie Molicki, a FLINT GROUP North

American account executive who had an office in Carol Stream, Illinois, regarding the customer

complaints that TEEPAK had received.  Mr. Molicki visited the Danville plant on February 26,

2007. TEEPAK employees reviewed the printing process with Mr. Molicki and provided to him samples of the ink for testing by FLINT INK.

28.     TEEPAK gave Mr. Molicki a letter, dated February 23, 2007, seeking reimbursement for the claims that it had received from its customers up until that time. Mr. Molicki advised that copies of the letter should be sent to FLINT INK and TEEPAK mailed copies to the individuals that Mr. Molicki identified.

29.     After TEEPAK submitted the claims, FLINT INK reported that it tested the ink, but concluded that there was no deviation in the quality or composition of the ink, and that the flaking problem was not the result of any modification to the Original Formula. FLINT INK did not provide TEEPAK with any analysis related to its testing.

30.     In the summer of 2007, TEEPAK proposed that the parties conduct a joint test using casings from 2000 through 2007 to determine whether the ink formula had changed in 2005. FLINT INK had the only remaining ink samples from that time period. FLINT INK initially agreed to provide these samples and to participate in the testing. TEEPAK arranged to send one of its chemists to FLINT INK's plant in the Netherlands, but FLINT INK subsequently cancelled the tests.

31.     FLINT INK has refused to reimburse TEEPAK for any damage claims from its customers.

## COUNT I: BREACH OF CONTRACT

32.     TEEPAK incorporates by reference the allegations stated in paragraphs 1-31 of the Amended Complaint.

33.     In 2005 and 2006, TEEPAK and FLINT INK entered into contracts pursuant to which FLINT INK agreed to sell Original Formula to TEEPAK. (*See* Exhibits C-I).

34.    FLINT INK breached the contracts by failing provide TEEPAK with the Original Formula, instead delivering to TEEPAK the New Ink.

35.    As a direct and proximate result of FLINT INK's failure to provide the Original Formula, TEEPAK has incurred losses and costs in excess of $2 million, including, without limitation, reimbursing its customers for their claims, lost profits, the expense of stock that could not be used, and additional costs of manufacturing.

## COUNT II: BREACH OF WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

36.    TEEPAK incorporates by reference the allegations stated in paragraphs 1-35 of the Amended Complaint.

37.    At the time of the sales in 2005 and 2006, FLINT INK knew or had reason to know that TEEPAK intended to use the ink on casings that would be subjected to the freeze-and-thaw process.

38.    TEEPAK relied on FLINT INK's expertise and skill as the ink manufacturer to furnish an ink that would withstand the freeze-and-thaw process, as FLINT INK had done successfully in the past.

39.    FLINT INK failed to furnish ink that was fit to withstand the freeze-and-thaw process and thereby by breached its warranty of fitness for a particular purpose.

40.    TEEPAK suffered damage as a result of FLINT INK's failure to furnish suitable ink.

## COUNT III: NEGLIGENT MISREPRESENTATION

41.    TEEPAK incorporates by reference the allegations stated in paragraphs 1-40 of the Amended Complaint.

42.    As the ink manufacturer, FLINT INK was in a unique position to know the composition of the ink that it supplied to TEEPAK in response to the May 2005 and Subsequent

Purchase Orders. FLINT INK had a duty to provide TEEPAK with accurate information regarding the product.

43.    Despite TEEPAK's repeated inquiries regarding the composition of the ink, FLINT INK and FLINT GROUP employees acting on behalf of FLINT INK, represented that the ink that it supplied in 2005 and 2006 was the same as the Original Formula.

44.    FLINT INK's representations regarding the composition of the ink were false.

45.    FLINT INK intended TEEPAK to rely on FLINT INK's representations regarding the formulation of the ink to induce TEEPAK to continue purchasing FLINT INK's products.

46.    FLINT INK was negligent in determining whether the ink that supplied to TEEPAK in 2005 and 2006 was the Original Formula.

47.    TEEPAK relied on FLINT INK's representations that the ink was the Original Formula when it purchased and used the ink in 2005 and 2006.

48.    TEEPAK was damaged as a result of relying on FLINT INK's representations regarding the composition and qualities of the ink that it purchased in 2005 and 2006.

## COUNT IV: FRAUD

49.    TEEPAK incorporates by reference the allegations stated in paragraphs 1-48 of the Amended Complaint.

50.    FLINT INK and FLINT GROUP employees acting on behalf of FLINT INK, represented that the ink that it supplied to TEEPAK in 2005 and 2006 was the Original Formula.

51.    FLINT INK's representations regarding the composition of the ink were false.

52.    FLINT INK intended TEEPAK to rely on these representations regarding the formulation of the ink to induce TEEPAK to continue purchasing its products.

53.    FLINT INK knew that the formula for the ink it was selling was not the same as the Original Formula.

54.     TEEPAK relied on FLINT INK's representation that the ink was the Original Formula when it purchased and used the ink in late 2005 and 2006.

55.     TEEPAK was damaged as a result of relying on FLINT INK's representations regarding the composition and quality of the ink that it purchased in late 2005 and 2006.

## COUNT V:  ILLINOIS CONSUMER FRAUD AND TRADE PRACTICES ACT

56.     TEEPAK incorporates by reference the allegations stated in paragraphs 1-55 of the Amended Complaint.

57.     By engaging in the conduct set forth in paragraphs 1-55, FLINT INK engaged in deceptive acts or practices in violation of Section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

58.     TEEPAK has suffered substantial injury as a result of FLINT INK's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

## PRAYER FOR RELIEF

59.     Based on all of the facts alleged in the Amended Complaint, TEEPAK seeks judgment against FLINT INK for compensatory damages in excess of $2 million, punitive damages, interest, late fees, costs and attorneys' fees incurred in this action, and any such other relief as this Court deems appropriate.

Dated: March 26, 2008                    VISCOFAN USA, INC.


                                         By:      /s/ Steven H. Hoeft
                                                  One of Its Attorneys


                                         Steven H. Hoeft, P.C. (IL Bar #1232290)
                                         McDermott Will & Emery LLP
                                         227 West Monroe Street
                                         Chicago, Illinois 60606
                                         Telephone:  (312) 984-7737
                                         Facsimile:  (312) 984-7700

# EXHIBIT A

# DEVRO/// TEEPAK™

May 2, 1997

Dr. Henker
Gebr-Schmidt GmbH
Hausadresse
Gaugrafenstrelle 4-B
60489 Frankfurt, Germany

Dear Mr. Henker:

Per our telephone conversation today, May 2, 1997, listed below is the information you have requested.

The Company name and address are on the letter head;  telephone number is (217) 446-6460 with my extension 5389; and fax number (217) 442-2617.

As indicated to you over the phone, our problem is INK FLAKING OFF on printed materials (tubular film made up of cellophane used by meat packing industry as casing for hot dogs) after a series of freeze and thaw conditions.  Test results of the casing printed with Schmidt water base ink in our sister company in Czech Republic held up very good. This is the reason why I am very much interested with the product and would like to request an ink sample for confirmation and evaluation tests.  In our conversation, you mentioned and suggested to use white ink with identification 10-WD-015 which is a newly developed product with improved adhesion properties.

I would highly appreciate it if you can send me the above ink at your convenience (approximately 5 kilogram) together with the corresponding cross linker, formulation (recipe) for printing, product identifications and descriptions as well as Material Safety Data Sheet.

Looking forward to working with you on the above matter.

Sincerely,

Jose P. Pascual
Chemical Engineer

c:  Ralph Jerutka - Manager -  CP & PD group
    Chuch Walitalo - Manager - Plastics
    File

# EXHIBIT B



Douglas E Appleby
04/19/2000 01:12 PM

To:      Eveline.Artner@gs-druckfarben.at
cc:
Subject:  Danville Ink

I must apologize for taking so long to get back to you. The casing that was printed with the reformulated ink is in the Philippines and it takes some time to get information back and forth.

Our customer is using the printed casing with the understanding that we will be supplying him with the old formulation in the future. His business is currently very strong and the product is not sitting in his freezer as long as it would under normal market conditions. Under this short cycle condition, the new formulation is holding up OK.

Our laboratory tests have shown that the reformulated ink is marginal and not acceptable. We have retested the old formulation ink to confirm the difference and have found it to be conclusive. **The Danville plant will need to continue to use the old formualtion ink.**

Just for your information, the market we sell to with your ink is an extremely difficult application for any ink. We have tried many, many commercial inks and have had a consultant try to formulate a custom ink for us without success. The product is stuffed and frozen after cooking. The product may then be thawed and frozen several more times before it is finally used. By the third freeze/thaw cycle, we find the ink flaking off the casing. The old formulation does not flake off.

# EXHIBIT C

# Visc⬤fan

Page    1

Viscofan USA, Inc.
915 North Michigan Ave.
Danville, IL 61832-0597
217-446-6460

WURZBURGENFABRIK GERB SCHMIDT
BREITENFORTER STASSE 146
POSTFACH 28 A-1233
WIEN VIENNA 62, GERMANY

SEND INVOICES TO ABOVE ADDRESS
ATTENTION OF ACCOUNTS PAYABLE

| Date |
| --- |
| 05/25/05 |

| Purchase Order No. |
| --- |
| 25003223 |

| Supplier Number |
| --- |
| 1009685 |

| Item | Quantity | Unit | Description | Unit Price | Extended Price |
| --- | --- | --- | --- | --- | --- |
| | 60.000 KG | | MATERIAL NON TAXABLE (4) | | |
| | | | 16 WA 0010DA WHITE INK | 5.900/KG | 3,540.00 |
| | | | SHIP VIA AIR. | | |
| | | | SHIP VIA YUSEN AIR & SEA SERVICE | | |
| | | | HUNDELSHEIMER WEG 59, 40472 DUESSELDORF, | | |
| | | | GERMANY - 49-211-41854-443 (T) | | |
| | | | 49-211-41854-400 (FAX) | | |
| | | | REQUEST DATE: 06/17/05 | | |

| | TOTAL | 3,540.00 |
| --- | --- | --- |

SHIP VIA:

TERMS OF DELIVERY:    FOB - Their Dock                    PAYMENT TERMS:    NET 30

Goods to be Delivered to:  Viscofan USA, Inc.        REPLY TO PURCHASING
915 N Michigan Ave        FAX: 217-444-8240
Delivery Required By:      Danville IL 61832

06-17-05

ROSEMARY WHEELER
Purchasing Agent

RECEIVING INSTRUCTIONS: Purchase order number must appear on all shipping documents, bills of lading and packaging. All deliveries must be received between 7:00 am and 1:00 pm, M-F.

INVOICE INSTRUCTIONS: Purchase order number must appear on all invoices. Send invoices to the attention of Accounts Payable. If freight charges are equal to or greater than $100, a copy of the freight bill must accompany the invoice. ALL INVOICES MUST BE SUBMITTED IN DUPLICATE.

CONTRACTOR INSTRUCTIONS: Contractors are responsible for insuring that Certificates of Insurance, Hold Harmless Agreements, Secrecy Agreements and MSDS notifications are kept current with Viscofan USA, Inc. Purchasing Dept.

FAILURE TO ADHERE TO INSTRUCTIONS MAY RESULT IN DELIVERY REFUSAL AND/OR LATE, PARTIAL OR NO PAYMENT.

# OTHER TERMS AND CONDITIONS

The prices stated in this order are inclusive of all charges for packing, containers and cartage, except as otherwise specifically provided on the face of this order.

All merchandise and services covered by this order are warranted by Seller to be in strict accordance with all specifications stated in this order or any supplement hereto and of such quality and ingredients suitable for intended use by Buyer. Failure of buyer to supply specifications shall not be in derogation of warranties implied by law in connection with the sale or the Seller's warranties of merchantability and fitness for particular purposes. Buyer's inspection or failure to inspect, payment of the purchase price or acceptance of delivery of the merchandise sold hereunder shall not waive or terminate any of Seller's warranties, express or implied, or be in derogation of any of the Buyer's remedies for breach of this contract. Seller shall be liable to Buyer or third parties for any damages to Buyer or third parties resulting from Breach of Seller's warranties.

Seller warrants that the goods covered by this purchase order and the sale to, or use or resale thereof by Buyer does not infringe any letters patent of the United States and Seller agrees to protect and indemnify Buyer against any and all loss, damages or expense resulting from any claim of infringement which may be made against Buyer. Seller will, at its own cost and expense, defend Buyer against any suit or proceedings which may be brought against it or any of its customers arising out of any claim of infringement.

Seller warrants that all goods and services furnished in connection with this order shall be free of claims of any kind by any third party, including seller's employees, sub-contractors, and material-men, and agrees to indemnify buyer and hold buyer harmless from any such claims and any expenses incident thereto, including reasonable attorney's fees, said indemnification including all costs of defending claims, perfecting title, and/or removal of liens in any way associated with or resulting from the performance of this order.

Seller represents and warrants that each and every chemical, chemical substance, and/or ingredient there of furnished pursuant to this purchase order is, at the time of such sale and delivery to Buyer, manufactured, sold, and/or delivered in compliance with all applicable provisions of the Toxic Substances Control Act, and

That the products furnished do not contain chemicals or other substances the use of which has been banned, restricted, or limited in any manner by any law or regulation without such restriction or limitation being clearly justified with respect to each such product.

All defective material or materials in excess of quantities ordered will be returned at Seller's expense. Defective materials shall not be replaced by Seller unless authorized to do so in writing by Buyer.

In settlement of any and all claims by Seller, in event of cancellation by Buyer and except where cancellation is for Seller's default. Buyer shall pay Seller the amount of its actual expenditures for labor and material incurred prior to such cancellation, plus its reasonable overhead, and a reasonable rate of profit on such expenditures and overhead, less the value of such material otherwise disposable, plus its other cancellation costs, reasonably and necessarily incurred, and thereupon any remaining material in the hands of Seller which is not otherwise disposable shall become the property of Buyer.

Buyer shall have the right to make from time to time, changes as to packing, testing, destination, specifications, designs, and delivery schedule (postponements only). Seller shall immediately notify Buyer of any increases or decreases in costs caused by such changes and an equitable adjustment in prices or other terms hereof shall be agreed upon in a written amendment to this purchase order.

The particulars of performance, not otherwise set forth in this purchase order, shall be specified by Buyer.

All risk of loss or damage to the merchandise sold hereunder rests with Seller until Buyer obtains possession of the merchandise sold hereunder.

This purchase order is nonassignable by Seller and only Seller can perform the duties required of it hereunder.

This purchase order shall be deemed to be made in, and shall be governed by, the law of the State of Illinois.

Except to the extent this order is exempted therefrom, the Equal Employment Opportunity clause required by Section 202 of Executive Order 11246, Executive Order 11375, the VEVRAA of 1973, Section 503 of the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1991, and the ADA of 1990, as amended, are incorporated herein by specific reference.

# EXHIBIT D

Page    1

# Viscofan

TE IYFARBENFABRIK GERB SCHMIDT
WALDENFURTER STASSE 146
POSTFACH 28 A-1233
WIEN WENNA 60, GERMANY

Viscofan USA, Inc.
915 North Michigan Ave.
Danville, IL 61832-0597
217-446-6460

INVOICES TO ABOVE ADDRESS
MAIL TO: OUR ACCOUNTS PAYABLE

| | Date |
|---|---|
| | 07/14/05 |
| Purchase Order No | |
| | 25004193 |
| Supplier Number | |
| | 1009685 |

| Item | Quantity | Unit | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|
| | | | MATERIAL NON TAXABLE (4) | | |
| 1 | 1000.000 | KG | 15 WA 0010 DA WHITE INK | 5.900/KG | 5,900.00 |
| | | | REQUEST DATE: 07/29/05 | | |
| 2 | 100.000 | KG | ACTIVATOR 90HP191 | 41.200/KG | 4,120.00 |
| | | | PACK IN 5 KG CONTAINERS | | |
| | | | REQUEST DATE: 07/29/05 | | |
| 3 | 40.000 | KG | ANTIFOAM 90LA0190 | 11.800/KG | 472.00 |
| | | | IN 5 KG CONTAINERS | | |
| | | | | | |
| | | | SHIP VIA AIR. | | |
| | | | ROUTE THRU YUSEN AIR & SEA SERVICE | | |
| | | | KUENDELHEIMER WEG 59, 40472 DUESSELDORF, | | |
| | | | GERMANY. | | |
| | | | (TELEPHONE: 49-211-41854-443) | | |
| | | | (FAX: 49-211-41854-400) | | |
| | | | REQUEST DATE: 07/29/05 | | |

| SHIP VIA: | | TOTAL | 10,492.00 |
|---|---|---|---|

| TERMS OF DELIVERY: | FOB    Their Dock | PAYMENT TERMS: | NET 30 |
|---|---|---|---|

Goods to be Delivered to: Viscofan USA, Inc.
915 N Michigan Ave
Danville IL 61832

Delivery Required By: AT ONCE

PHONE: 217-446-6460
FAX: 217-444-8080

ROSEMARY WHEELER
Purchasing Agent

RECEIVING INSTRUCTIONS: Purchase order number must appear on all shipping documents, bills of lading and packaging. All deliveries must be received between 7:00 am and 1:00 pm, M-F.

INVOICE INSTRUCTIONS: Purchase order number must appear on all invoices. Send invoices to the attention of Accounts Payable. If freight charges are equal to or greater than $100, a copy of the freight bill must accompany the invoice. ALL INVOICES MUST BE SUBMITTED IN DUPLICATE.

CONTRACTOR INSTRUCTIONS: Contractors are responsible for insuring that Certificates of Insurance, Hold Harmless Agreements, Secrecy Agreements and MSDS notifications are kept current with Viscofan USA, Inc. Purchasing Dept.

FAILURE TO ADHERE TO INSTRUCTIONS MAY RESULT IN DELIVERY REFUSAL AND/OR LATE, PARTIAL OR NO PAYMENT.

# OTHER TERMS AND CONDITIONS

The prices stated in this order are inclusive of all charges for packing, containers and cartage, except as otherwise specifically provided on the face of this order.

All merchandise and services covered by this order are warranted by Seller to be in strict accordance with all specifications stated in this order or any supplement hereto and of such quality and ingredients suitable for intended use by Buyer. Failure of buyer to supply specifications shall not be in derogation of warranties implied by law in connection with the sale or the Seller's warranties of merchantability and fitness for particular purposes. Buyer's inspection or failure to inspect, payment of the purchase price, or acceptance of delivery of the merchandise sold hereunder shall not waive or terminate any of Seller's warranties, express or implied, or be in derogation of any of the Buyer's remedies for breach of this contract. Seller shall be liable to Buyer or third parties for any damages to Buyer or third parties resulting from Breach of Seller's warranties.

Seller warrants that the goods covered by this purchase order and the sale to, or use or resale thereof by Buyer does not infringe any letters patent of the United States and Seller agrees to protect and indemnify Buyer against any and all loss, damages or expense resulting from any claim of infringement which may be made against Buyer. Seller will, at its own cost and expense, defend Buyer against any suit or proceedings which may be brought against it or any of its customers arising out of any claim of infringement.

Seller warrants that all goods and services furnished in connection with this order shall be free of claims of any kind by any third party, including seller's employees, sub-contractors, and material-men, and agrees to indemnify buyer and hold buyer harmless from any such claims and any expenses incident thereto, including reasonable attorney's fees, said indemnification including all costs of defending claims, perfecting title, and/or removal of liens in any way associated with or resulting from the performance of this order.

Seller represents and warrants that each and every chemical, chemical substance, and/or ingredient there of furnished pursuant to this purchase order is, at the time of such sale and delivery to Buyer, manufactured, sold, and/or delivered in compliance with all applicable provisions of the Toxic Substances Control Act, and

That the products furnished do not contain chemicals or other substances the use of which has been banned, restricted, or limited in any manner by any law or regulation without such restriction or limitation being clearly identified with respect to each such product.

All defective material or materials in excess of quantities ordered will be returned at Seller's expense. Defective materials shall not be replaced by Seller unless authorized to do so in writing by Buyer.

In settlement of any and all claims by Seller, in event of cancellation by Buyer and except where cancellation is for Seller's default, Buyer shall pay Seller the amount of its actual expenditures for labor and material incurred prior to such cancellation, plus its reasonable overhead, and a reasonable rate of profit on such expenditures and overhead, less the value of such material otherwise disposable, plus its other cancellation costs, reasonably and necessarily incurred, and thereupon any remaining material in the hands of Seller which is not otherwise disposable shall become the property of Buyer.

Buyer shall have the right to make from time to time, changes as to packing, testing, destination, specifications, designs, and delivery schedule (postponements only). Seller shall immediately notify Buyer of any increases or decreases in costs caused by such changes and an equitable adjustment in prices or other terms hereof shall be agreed upon in a written amendment to this purchase order.

The particulars of performance, not otherwise set forth in this purchase order, shall be specified by Buyer.

All risk of loss or damage to the merchandise sold hereunder rests with Seller until Buyer obtains possession of the merchandise sold hereunder.

This purchase order is nonassignable by Seller and only Seller can perform the duties required of it hereunder.

This purchase order shall be deemed to be made in, and shall be governed by, the law of the State of Illinois.

Except to the extent this order is exempted therefrom, the Equal Employment Opportunity clause required by Section 202 of Executive Order 11246, Executive Order 11375, the VEVRAA of 1974, Section 503 of the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1991, and the ADA of 1990 is amended are incorporated herein by specific reference.

# EXHIBIT E

# Viscofan

GUMMIPAPIERFABRIK GERB SCHMIDT
BREITENFURTER STRASSE 146
POSTFACH 23 A-1233
WIEN VIENNA 23, GERMANY

Viscofan USA, Inc.
915 North Michigan Ave.
Danville, IL 61832-0597
217-446-6460

ALL INVOICES TO ABOVE ADDRESS
ATTENTION OF ACCOUNTS PAYABLE

| | Date |
|---|---|
| | 10/03/05 |
| | Purchase Order No. |
| | 03005875 |
| | Supplier Number |
| | 1309685 |

| Item | Quantity | Unit | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|
| | | | MATERIAL NON TAXABLE (4) | | |
| | 1000.000 | KG | 15 WA 0010 DA WHITE INK | 5.900/KG | 5,900.00 |
| | | | SHIP VIA AIR. | | |
| | | | SHIP VIA YUSEN AIR & SEA SERVICE, MUNDELHEIMER WEG 59, 40472 DUSSELDORF GERMANY.  PHONE: 49-211-41854-443. FAX: 49-211-41854-400 | | |
| | | | MATERIAL IS URGENTLY NEEDED.  PLEASE CONFIRM SHIPMENT. REQUEST DATE: 10/14/05 | | |

| SHIP VIA: | | TOTAL | 5,900.00 |
|---|---|---|---|

TERMS OF DELIVERY:  FOB - Their Dock          PAYMENT TERMS:  NET 30

Goods to be Delivered to: Viscofan USA, Inc.
915 N Michigan Ave
Danville IL 61832

Delivery Required By:
10/14/05

REPLY TO PURCHASING
FAX: 217-444-8240

ROSEMARY WHEELER
Purchasing Agent

RECEIVING INSTRUCTIONS: Purchase order number must appear on all shipping documents, bills of lading and packaging. All deliveries must be received between 7:00 am and 1:00 pm, M-F.

INVOICE INSTRUCTIONS: Purchase order number must appear on all invoices. Send invoices to the attention of Accounts Payable. If freight charges are equal to or greater than $100, a copy of the freight bill must accompany the invoice. ALL INVOICES MUST BE SUBMITTED IN DUPLICATE.

CONTRACTOR INSTRUCTIONS: Contractors are responsible for insuring that Certificates of Insurance, Hold Harmless Agreements, Secrecy Agreements and MSDS notifications are kept current with Viscofan USA, Inc. Purchasing Dept.

FAILURE TO ADHERE TO INSTRUCTIONS MAY RESULT IN DELIVERY REFUSAL AND/OR LATE, PARTIAL OR NO PAYMENT.

# OTHER TERMS AND CONDITIONS

The prices stated in this order are inclusive of all charges for packing, containers and cartage, except as otherwise specifically provided on the face of this order.

All merchandise and services covered by this order are warranted by Seller to be in strict accordance with all specifications stated in this order or any supplement hereto and of such quality and ingredients suitable for intended use by Buyer. Failure of buyer to supply specifications shall not be in derogation of warranties implied by law in connection with the sale or the Seller's warranties of merchantability and fitness for particular purposes. Buyer's inspection or failure to inspect, payment of the purchase price, or acceptance of delivery of the merchandise sold hereunder shall not waive or terminate any of Seller's warranties, express or implied, or be in derogation of any of the Buyer's remedies for breach of this contract. Seller shall be liable to Buyer or third parties for any damages to Buyer or third parties resulting from Breach of Seller's warranties.

Seller warrants that the goods covered by this purchase order and the sale to, or use or resale thereof by Buyer does not infringe any letters patent of the United States and Seller agrees to protect and indemnify Buyer against any and all loss, damages or expense resulting from any claim of infringement which may be made against Buyer. Seller will, at its own cost and expense, defend Buyer against any suit or proceedings which may be brought against it or any of its customers arising out of any claim of infringement.

Seller warrants that all goods and services furnished in connection with this order shall be free of claims of any kind by any third party, including seller's employees, sub-contractors, and material-men, and agrees to indemnify buyer and hold buyer harmless from any such claims and any expenses incident thereto, including reasonable attorney's fees, said indemnification including all costs of defending claims, perfecting title, and/or removal of liens in any way associated with or resulting from the performance of this order.

Seller represents and warrants that each and every chemical, chemical substance, and/or ingredient there of furnished pursuant to this purchase order is, at the time of such sale and delivery to Buyer, manufactured, sold, and/or delivered in compliance with all applicable provisions of the Toxic Substances Control Act; and

That the products furnished do not contain chemicals or other substances the use of which has been banned, restricted, or limited in any manner by any law or regulation without such restriction or limitation being clearly identified with respect to each such product.

All defective material or materials in excess of quantities ordered will be returned at Seller's expense. Defective materials shall not be replaced by Seller unless authorized to do so in writing by Buyer.

In settlement of any and all claims by Seller, in event of cancellation by Buyer and except where cancellation is for Seller's default. Buyer shall pay Seller the amount of its actual expenditures for labor and material incurred prior to such cancellation, plus its reasonable overhead, and a reasonable rate of profit on such expenditures and overhead, less the value of such material otherwise disposable, plus its other cancellations costs, reasonably and necessarily incurred, and thereupon any remaining material in the hands of Seller which is not otherwise disposable shall become the property of Buyer.

Buyer shall have the right to make from time to time, changes as to packing, testing, destination, specifications, designs, and delivery schedule (postponement only). Seller shall immediately notify Buyer of any increases or decreases in costs caused by such changes and an equitable adjustment in prices or other terms hereof shall be agreed upon in a written amendment to this purchase order.

The particulars of performance, not otherwise set forth in this purchase order, shall be specified by Buyer.

All risk of loss or damage to the merchandise sold hereunder rests with Seller until Buyer obtains possession of the merchandise sold hereunder.

This purchase order is nonassignable by Seller and only Seller can perform the duties required of it hereunder.

This purchase order shall be deemed to be made in, and shall be governed by, the law of the State of Illinois.

Except to the extent this order is exempted therefrom, the Equal Employment Opportunity clause required by Section 202 of Executive Order 11246, Executive Order 11375, the VEVRAA of 1973, Section 503 of the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1991, and the ADA of 1990, as amended, are incorporated herein by specific reference.

# EXHIBIT F

# Viscofan

Viscofan USA, Inc.
915 North Michigan Ave.
Danville, IL 61832-0597
217-446-6460

ALL INVOICES TO ABOVE ADDRESS
ATTENTION OF ACCOUNTS PAYABLE

WARET THE WINDSCHOTEN BV
LONGBAAN 6 PO BOX 96
9670 AS WINDSCHOTEN
THE NETHERLANDS

FAX:  0113/ 1097400216

| Date |
|---|
| 11/03/05 |
| Purchase Order No. |
| 2500630 |
| Supplier Number |
| 1014313 |

| Item | Quantity | Unit | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|
| | | | MATERIAL NON TAXABLE (4) | | |
| | 1000.000 | KG | 15 RA 0610 DA WHITE INK<br>REQUEST DATE: 11/30/05 | 8.800/KG | 8,800.00 |
| | 200.000 | KG | 00HP101 ACTIVATOR<br>REQUEST DATE: 11/30/05 | 41.200/KG | 8,240.00 |
| | 400.000 | KG | 00LS964 PH ADJUSTOR FOR INK<br>REQUEST DATE: 11/30/05 | 5.900/KG | 2,360.00 |
| | | | SHIP VIA BOAT ASAP. SHIP VIA YUSEN<br>AIR & SEA SERVICE, MUENDELHEIMER WEG<br>55, 40472 DUESSELDORF, GERMANY<br>49-211-41854-443 (T)<br>49-211 41854-400 (FAX)<br><br>PLEASE ACKNOWLEDGE RECEIVE OF ORDER VIA<br>E-MAIL TO:  ROSEMARY.WHEELER-VTEEPAK.COM<br>REQUEST DATE: 11/30/05 | | |

| SHIP VIA: | | TOTAL | 19,400.00 |
|---|---|---|---|

| TERMS OF DELIVERY: | FOB - Their Dock | PAYMENT TERMS: | NET 30 |
|---|---|---|---|

Goods to be Delivered to: Viscofan USA, Inc.
915 N Michigan Ave
Danville IL 61832

Delivery Required By:
00/00/00

REPLY TO PURCHASING
FAX: 217-444-8240

ROSEMARY WHEELER
**Purchasing Agent**

RECEIVING INSTRUCTIONS: Purchase order number must appear on all shipping documents, bills of lading and packaging. All deliveries must be received between 7:00 am and 1:00 pm, M-F.

INVOICE INSTRUCTIONS: Purchase order number must appear on all invoices. Send invoices to the attention of Accounts Payable. If freight charges are equal to or greater than $100, a copy of the freight bill must accompany the invoice. ALL INVOICES MUST BE SUBMITTED IN DUPLICATE.

CONTRACTOR INSTRUCTIONS: Contractors are responsible for insuring that Certificates of Insurance, Hold Harmless Agreements, Secrecy Agreements and MSDS notifications are kept current with Viscofan USA, Inc. Purchasing Dept.

FAILURE TO ADHERE TO INSTRUCTIONS MAY RESULT IN DELIVERY REFUSAL AND/OR LATE, PARTIAL OR NO PAYMENT.

# OTHER TERMS AND CONDITIONS

The prices stated in this order are inclusive of all charges for packing, containers and cartage, except as otherwise specifically provided on the face of this order.

All merchandise and services covered by this order are warranted by Seller to be in strict accordance with all specifications stated in this order or any supplement hereto and of such quality and ingredients suitable for intended use by Buyer. Failure of buyer to supply specifications shall not be in derogation of warranties implied by law in connection with the sale or the Seller's warranties of merchantability and fitness for particular purposes. Buyer's inspection or failure to inspect, payment of the purchase price, or acceptance of delivery of the merchandise sold hereunder shall not waive or terminate any of Seller's warranties, express or implied, or be in derogation of any of the Buyer's remedies for breach of this contract. Seller shall be liable to Buyer or third parties for any damages to Buyer or third parties resulting from Breach of Seller's warranties.

Seller warrants that the goods covered by this purchase order and the sale to, or use or resale thereof by Buyer does not infringe any letters patent of the United States and Seller agrees to protect and indemnify Buyer against any and all loss, damages or expense resulting from any claim of infringement which may be made against Buyer. Seller will, at its own cost and expense, defend Buyer against any suit or proceedings which may be brought against it or any of its customers arising out of any claim of infringement.

Seller warrants that all goods and services furnished in connection with this order shall be free of claims of any kind by any third party, including seller's employees, sub-contractors, and material-men, and agrees to indemnify buyer and hold buyer harmless from any such claims and any expenses incident thereto, including reasonable attorney's fees, said indemnification including all costs of defending claims, perfecting title, and/or removal of liens in any way associated with or resulting from the performance of this order.

Seller represents and warrants that each and every chemical, chemical substance, and/or ingredient there of furnished pursuant to this purchase order is, at the time of such sale and delivery to Buyer manufactured, sold, and/or delivered in compliance with all applicable provisions of the Toxic Substances Control Act, and

That the products furnished do not contain chemicals or other substances the use of which has been banned, restricted, or limited in any manner by any law or regulation without such restriction or limitation being clearly identified with respect to each such product.

All defective material or materials in excess of quantities ordered will be returned at Seller's expense. Defective materials shall not be replaced by Seller unless authorized to do so in writing by Buyer.

In settlement of any and all claims by Seller, in event of cancellation by Buyer and except where cancellation is for Seller's default, Buyer shall pay Seller the amount of its actual expenditures for labor and material incurred prior to such cancellation, plus its reasonable overhead, and a reasonable rate of profit on such expenditures and overhead, less the value of such material otherwise disposable, plus its other cancellations costs, reasonably and necessarily incurred, and thereupon any remaining material in the hands of Seller which is not otherwise disposable shall become the property of Buyer.

Buyer shall have the right to make from time to time, changes as to packing, testing, destination, specifications, designs, and delivery schedule (postponements only). Seller shall immediately notify Buyer of any increases or decreases in costs caused by such changes and an equitable adjustment in prices or other terms hereof shall be agreed upon in a written amendment to this purchase order.

The particulars of performance, not otherwise set forth in this purchase order, shall be specified by Buyer.

All risk of loss or damage to the merchandise sold hereunder rests with Seller until Buyer obtains possession of the merchandise sold hereunder.

This purchase order is nonassignable by Seller and only Seller can perform the duties required of it hereunder.

This purchase order shall be deemed to be made in, and shall be governed by, the law of the State of Illinois.

Except to the extent this order is exempted therefrom, the Equal Employment Opportunity clause required by Section 202 of Executive Order 11246, Executive Order 11375, the VEVRAA of 1974, Section 503 of the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1991, and the ADA of 1990, as amended, are incorporated herein by specific reference.

# EXHIBIT G



Page    1

FLINT INK WINSCHOTEN BV
HOOGBAAN 6 PO BOX 86
9670 AB WINSCHOTEN
THE NETHERLANDS

Viscofan USA, Inc.
915 North Michigan Ave.
Danville, IL 61832-0597
217-446-6460

ALL INVOICES TO ABOVE ADDRESS
ATTENTION OF ACCOUNTS PAYABLE

FAX:   (113) 1597420216

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | **Date** | | |
| | | | | 08/09/06 | | |
| | | | | **Purchase Order No.** | | |
| | | | | 26003926 | | |
| | | | | **Supplier Number** | | |
| | | | | 1014313 | | |

| Item | Quantity | Unit | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|
| | | | MATERIAL NON TAXABLE (1) | | |
| 1 | 500.000 KG | | 15 WA 0010 DA WHITE INK<br>REQUEST DATE: 09/13/06 | 5.900/KG | 2,950.00 |
| 2 | 60.000 KG | | 90 LA 0130 ANTIFOAM<br>MUST NOT BE A SPRAY PRODUCT<br>REQUEST DATE: 09/13/06 | 8.440/KG | 506.40 |
| 3 | 60.000 KG | | 99 HP 191 ACTIVATOR | 41.200/KG | 2,472.00 |
| | | | SHIP VIA AIR.   SHIP VIA YUSEN<br>AIR & SEA SERVICE, MUENDELHEIMER WEG<br>59, 40472 DUESSELDORF, GERMANY<br>49-211-41854-443 (T)<br>49-211-41854-400 (FAX)<br><br>PLEASE ACKNOWLEDGE RECEIPT OF ORDER VIA<br>E-MAIL TO:  hanced@usa.viscofan.com<br><br>ATTN:  MARJAN VINCENT<br>REQUEST DATE: 09/13/06<br><br>ORDER FAXED 08/09/06 | | |

| | | |
|---|---|---|
| SHIP VIA: | | |
| | **TOTAL** | 5,928.40 |

**TERMS OF DELIVERY:**

**PAYMENT TERMS:**  NET 30

Goods to be Delivered to:   Viscofan USA, Inc.
915 N Michigan Ave
Danville IL 61832

Delivery Required By:
09/13/06

REPLY TO PURCHASING
FAX: 217-444-8240

C. Rosnett  444-8369
Purchasing Agent

RECEIVING INSTRUCTIONS: Purchase order number must appear on all shipping documents, bills of lading and packaging. All deliveries must be received between 7.00 am and 1.00 pm, M-F.

INVOICE INSTRUCTIONS: Purchase order number must appear on all invoices. Send invoices to the attention of Accounts Payable. If freight charges are equal to or greater than $100, a copy of the freight bill must accompany the invoice. ALL INVOICES MUST BE SUBMITTED IN DUPLICATE.

CONTRACTOR INSTRUCTIONS: Contractors are responsible for insuring that Certificates of Insurance, Hold Harmless Agreements, Secrecy Agreements and MSDS notifications are kept current with Viscofan USA, Inc. Purchasing Dept.

FAILURE TO ADHERE TO INSTRUCTIONS MAY RESULT IN DELIVERY REFUSAL AND/OR LATE, PARTIAL OR NO PAYMENT.

# OTHER TERMS AND CONDITIONS

The prices stated in this order are inclusive of all charges for packing, containers and cartage, except as otherwise specifically provided on the face of this order.

All merchandise and services covered by this order are warranted by Seller to be in strict accordance with all specifications stated in this order or any supplement hereto and of such quality and ingredients suitable for intended use by Buyer. Failure of buyer to supply specifications shall not be in derogation of warranties implied by law in connection with the sale or the Seller's warranties of merchantability and fitness for particular purposes. Buyer's inspection or failure to inspect, payment of the purchase price or acceptance of delivery of the merchandise sold hereunder shall not waive or terminate any of Seller's warranties, express or implied, or be in derogation of any of the Buyer's remedies for breach of this contract. Seller shall be liable to Buyer or third parties for any damages to Buyer or third parties resulting from Breach of Seller's warranties.

Seller warrants that the goods covered by this purchase order and the sale to, or use or resale thereof by Buyer does not infringe any letters patent of the United States and Seller agrees to protect and indemnify buyer against any and all loss, damages or expense resulting from any claim of infringement which may be made against Buyer. Seller will, at its own cost and expense, defend Buyer against any suit or proceedings which may be brought against it or any of its customers arising out of any claim of infringement.

Seller warrants that all goods and services furnished in connection with this order shall be free of claims of any kind by any third party, including seller's employees, sub-contractors, and material-men, and agrees to indemnify buyer and hold buyer harmless from any such claims and any expenses incident thereto, including reasonable attorney's fees, said indemnification including all costs of defending claims, perfecting title, and/or removal of liens in any way associated with or resulting from the performance of this order.

Seller represents and warrants that each and every chemical, chemical substance, and/or ingredient thereof furnished pursuant to this purchase order is, at the time of such sale and delivery to Buyer, manufactured, sold, and/or delivered in compliance with all applicable provisions of the Toxic Substances Control Act, and

That the products furnished do not contain chemicals or other substances the use of which has been banned, restricted, or limited in any manner by any law or regulation without such restriction or limitation being clearly identified with respect to each such product.

All defective material or materials in excess of quantities ordered will be returned at Seller's expense. Defective materials shall not be replaced by Seller unless authorized to do so in writing by Buyer.

In settlement of any and all claims by Seller, in event of cancellation by Buyer and except where cancellation is for Seller's default. Buyer shall pay Seller the amount of its actual expenditures for labor and material incurred prior to such cancellation, plus its reasonable overhead, and a reasonable rate of profit on such expenditures and overhead, less the value of such material otherwise disposable, plus its other cancellations costs, reasonably and necessarily incurred, and thereupon any remaining material in the hands of Seller which is not otherwise disposable shall become the property of Buyer.

Buyer shall have the right to make from time to time, changes as to packing, testing, destination, specifications, designs, and delivery schedule (postponements only). Seller shall immediately notify Buyer of any increases or decreases in costs caused by such changes and an equitable adjustment in prices or other terms hereof shall be agreed upon in a written amendment to this purchase order.

The particulars of performance, not otherwise set forth in this purchase order, shall be specified by Buyer.

All risk of loss or damage to the merchandise sold hereunder rests with Seller until Buyer obtains possession of the merchandise sold hereunder

This purchase order is nonassignable by Seller and only Seller can perform the duties required of it hereunder

This purchase order shall be deemed to be made in, and shall be governed by, the law of the State of Illinois.

Except to the extent this order is exempted therefrom, the Equal Employment Opportunity clause required by Section 202 of Executive Order 11246, Executive Order 11375, the VEVRAA of 1974, Section 503 of the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1991, and the ADA of 1990 as amended are incorporated herein by specific reference.

# EXHIBIT H

Page    1

# Viscofan

FLINT INK WINSCHOTEN BV
LIMBAAN 6 PO BOX 16
9670 AB WINSCHOTEN
THE NETHERLANDS

FAX: (0113) 1597420216

Viscofan USA, Inc.
915 North Michigan Ave.
Danville, IL 61832-0597
217-446-6460

ALL INVOICES TO ABOVE ADDRESS
ATTENTION OF ACCOUNTS PAYABLE

| Date |
|---|
| 08/31/06 |
| Purchase Order No. |
| 26004309 |
| Supplier Number |
| 1014313 |

| Item | Quantity | Unit | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|
| | | | MATERIAL NON TAXABLE (4) | | |
| | 10.000 | KG | 15 WA 0010 DA WHITE INK | 5.900/KG | 2,950.00 |
| | | | SHIP VIA AIR.  SHIP VIA YUSEN AIR & SEA SERVICE, MUENDELHEIMER WEG 69, 40472 DUESSELDORF, GERMANY 49-211-41854-443 (T) 19-211-41854-400 (FAX) | | |
| | | | PLEASE ACKNOWLEDGE RECEIPT OF ORDER VIA E-MAIL TO:  hanced@usa.viscofan.com REQUEST DATE: 08/31/06 | | |
| | | | ORDER FAXED 08/31/06 | | |

| SHIP VIA: | | TOTAL | 2,950.00 |
|---|---|---|---|

| TERMS OF DELIVERY: | . | PAYMENT TERMS: | NET 30 |
|---|---|---|---|

Goods to be Delivered to: Viscofan USA, Inc.
915 N Michigan Ave
Danville IL 61832

Delivery Required By:
09/15/06

REPLY TO PURCHASING
FAX: 217-444-8240

C. Rosnett 444-8368
Purchasing Agent

RECEIVING INSTRUCTIONS: Purchase order number must appear on all shipping documents, bills of lading and packaging. All deliveries must be received between 7:00 am and 1:00 pm, M-F.

INVOICE INSTRUCTIONS: Purchase order number must appear on all invoices. Send invoices to the attention of Accounts Payable. If freight charges are equal to or greater than $100, a copy of the freight bill must accompany the invoice. ALL INVOICES MUST BE SUBMITTED IN DUPLICATE.

CONTRACTOR INSTRUCTIONS: Contractors are responsible for insuring that Certificates of Insurance, Hold Harmless Agreements, Secrecy Agreements and MSDS notifications are kept current with Viscofan USA, Inc. Purchasing Dept.

FAILURE TO ADHERE TO INSTRUCTIONS MAY RESULT IN DELIVERY REFUSAL AND/OR LATE, PARTIAL OR NO PAYMENT.

## OTHER TERMS AND CONDITIONS

The prices stated in this order are inclusive of all charges for packing, containers and cartage, except as otherwise specifically provided on the face of this order.

All merchandise and services covered by this order are warranted by Seller to be in strict accordance with all specifications stated in this order or any supplement hereto and of such quality and ingredients suitable for intended use by Buyer. Failure of buyer to supply specifications shall not be in derogation of warranties implied by law in connection with the sale or the Seller's warranties of merchantability and fitness for particular purposes. Buyer's inspection or failure to inspect, payment of the purchase price, or acceptance of delivery of the merchandise sold hereunder shall not waive or terminate any of Seller's warranties, express or implied, or be in derogation of any of the Buyer's remedies for breach of this contract. Seller shall be liable to Buyer or third parties for any damages to Buyer or third parties resulting from Breach of Seller's warranties.

Seller warrants that the goods covered by this purchase order and the sale to, or use or resale thereof by Buyer does not infringe any letters patent of the United States and Seller agrees to protect and indemnify buyer against any and all loss, damages or expense resulting from any claim of infringement which may be made against Buyer. Seller will, at its own cost and expense, defend Buyer against any suit or proceedings which may be brought against it or any of its customers arising out of any claim of infringement.

Seller warrants that all goods and services furnished in connection with this order shall be free of claims of any kind by any third party, including seller's employees, sub-contractors, and material-men, and agrees to indemnify buyer and hold buyer harmless from any such claims and any expenses incident thereto, including reasonable attorney's fees, said indemnification including all costs of defending claims, perfecting title, and/or removal of liens in any way associated with or resulting from the performance of this order.

Seller represents and warrants that each and every chemical, chemical substance, and/or ingredient there of furnished pursuant to this purchase order is, at the time of such sale and delivery to Buyer, manufactured, sold, and/or delivered in compliance with all applicable provisions of the Toxic Substances Control Act, and

That the products furnished do not contain chemicals or other substances the use of which has been banned, restricted, or limited in any manner by any law or regulation without such restriction or limitation being clearly identified with respect to each such product.

All defective material or materials in excess of quantities ordered will be returned at Seller's expense. Defective materials shall not be replaced by Seller unless authorized to do so in writing by Buyer.

In settlement of any and all claims by Seller, in event of cancellation by Buyer and except where cancellation is for Seller's default. Buyer shall pay Seller the amount of its actual expenditures for labor and material incurred prior to such cancellation, plus its reasonable overhead, and a reasonable rate of profit on such expenditures and overhead, less the value of such material otherwise disposable, plus its other cancellations costs, reasonably and necessarily incurred, and thereupon any remaining material in the hands of Seller which is not otherwise disposable shall become the property of Buyer.

Buyer shall have the right to make from time to time, changes as to packing, testing, destination, specifications, designs, and delivery schedule (postponements only). Seller shall immediately notify Buyer of any increases or decreases in costs caused by such changes and an equitable adjustment in prices or other terms thereof shall be agreed upon in a written amendment to this purchase order.

The particulars of performance, not otherwise set forth in this purchase order, shall be specified by Buyer.

All risk of loss or damage to the merchandise sold hereunder rests with Seller until Buyer obtains possession of the merchandise sold hereunder.

This purchase order is nonassignable by Seller and only Seller can perform the duties required of it hereunder.

This purchase order shall be deemed to be made in, and shall be governed by, the law of the State of Illinois.

Except to the extent this order is exempted therefrom, the Equal Employment Opportunity clause required by Section 202 of Executive Order 11246, Executive Order 11375, the VEVRAA of 1974, Section 503 of the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1991, and the ADA of 1990, are incorporated herein by specific reference.

# EXHIBIT I

# Viscofan

Page 1

FLINT INK WINSCHOTEN BV
RENSELAAN 6 PO BOX 96
9670 AB WINSCHOTEN
THE NETHERLANDS

FAX: (0113) 1597420216

Viscofan USA, Inc.
915 North Michigan Ave.
Danville, IL 61832-0597
217-446-6460

ALL INVOICES TO ABOVE ADDRESS
ATTENTION OF ACCOUNTS PAYABLE

| | Date |
|---|---|
| | 09/28/06 |
| Purchase Order No. | |
| | 16004764 |
| Supplier Number | |
| | 1014313 |

| Item | Quantity | Unit | Description | Unit Price | Extended Price |
|---|---|---|---|---|---|
| | | | MATERIAL NON TAXABLE (4) | | |
| 1 | 1000.000 | KG | 15 WA 0010 DA WHITE INK | 5.900/KG | 5,900.00 |
| | | | SHIP VIA AIR.  SHIP VIA YUSEN AIR & SEA SERVICE, MUENDELHEIMER WEG 59, 40472 DUESSELDORF, GERMANY 49-211-41854-443 (T) 49-211-41854-400 (FAX) | | |
| | | | PLEASE ACKNOWLEDGE RECEIPT OF ORDER VIA E-MAIL TO:  hanced@usa.viscofan.com REQUEST DATE: 11/03/06 | | |
| 2 | 60.000 | KG | 00 LA 0190 ANTIFOAM MUST NOT BE A SPRAY PRODUCT REQUEST DATE: 11/03/06 | 8.440/KG | 506.40 |
| 3 | 60.000 | KG | 09 HP 191 ACTIVATOR PACK IN 5 KG CONTAINERS | 41.200/KG | 2,472.00 |
| | | | SHIP VIA BOAT ASAP - SHIP VIA YUSEN AIR & SEA SERVICE, MUENDELHEIMER WEG 59, 40472 DUESSELDORF, GERMANY 49-211-41854-443 (T) 49-211-41854-400 (FAX) | | |
| | | | PLEASE ACKNOWLEDGE RECEIPT OF ORDER VIA E-MAIL TO:  hanced@usa.viscofan.com REQUEST DATE: 11/03/06 | | |

SHIP VIA:

**TOTAL**   8,878.40

TERMS OF DELIVERY: .

PAYMENT TERMS:   NET 30

Goods to be Delivered to: Viscofan USA, Inc.
915 N Michigan Ave
Danville IL 61832

Delivery Required By:
11/03/06

REPLY TO PURCHASING
FAX: 217-444-8240

C. Rosnett 444-8368
Purchasing Agent

RECEIVING INSTRUCTIONS: Purchase order number must appear on all shipping documents, bills of lading and packaging. All deliveries must be received between 7:00 am and 1:00 pm, M-F.

INVOICE INSTRUCTIONS: Purchase order number must appear on all invoices. Send invoices to the attention of Accounts Payable. If freight charges are equal to or greater than $100, a copy of the freight bill must accompany the invoice. ALL INVOICES MUST BE SUBMITTED IN DUPLICATE.

CONTRACTOR INSTRUCTIONS: Contractors are responsible for insuring that Certificates of Insurance, Hold Harmless Agreements, Secrecy Agreements and MSDS notifications are kept current with Viscofan USA, Inc. Purchasing Dept.

FAILURE TO ADHERE TO INSTRUCTIONS MAY RESULT IN DELIVERY REFUSAL AND/OR LATE, PARTIAL OR NO PAYMENT.

# OTHER TERMS AND CONDITIONS

The prices stated in this order are inclusive of all charges for packing, containers and cartage, except as otherwise specifically provided on the face of this order.

All merchandise and services covered by this order are warranted by Seller to be in strict accordance with the specifications stated in this order or any supplement hereto and of such quality and ingredients suitable for intended use by Buyer. Failure of buyer to supply specifications shall not be in derogation of warranties implied by law in connection with the sale or the Seller's warranties of merchantability and fitness for particular purposes. Buyer's inspection or failure to inspect, payment of the purchase price or acceptance of delivery of the merchandise sold hereunder shall not waive or terminate any of Seller's warranties, express or implied, or be in derogation of any of the Buyer's remedies for breach of this contract. Seller shall be liable to Buyer or third parties for any damages to Buyer or third parties resulting from Breach of Seller's warranties.

Seller warrants that the goods covered by this purchase order and the sale to, or use or resale thereof by Buyer does not infringe any letters patent of the United States and Seller agrees to protect and indemnify Buyer against any and all loss, damages or expense resulting from any claim of infringement which may be made against Buyer. Seller will, at its own cost and expense, defend Buyer against any suit or proceedings which may be brought against it or any of its customers arising out of any claim of infringement.

Seller warrants that all goods and services furnished in connection with this order shall be free of claims of any kind by any third party, including seller's employees, sub-contractors, and material-men, and agrees to indemnify buyer and hold buyer harmless from any such claims and any expenses incident thereto, including reasonable attorney's fees, said indemnification including all costs of defending claims, perfecting title, and/or removal of liens in any way associated with or resulting from the performance of this order.

Seller represents and warrants that each and every chemical, chemical substance, and/or ingredient there of furnished pursuant to this purchase order is, at the time of such sale and delivery to Buyer manufactured, sold, and/or delivered in compliance with all applicable provisions of the Toxic Substances Control Act, and

That the products furnished do not contain chemicals or other substances the use of which has been banned, restricted, or limited in any manner by any law or regulation without such restriction or limitation being clearly identified with respect to each such product.

All defective material or materials in excess of quantities ordered will be returned at Seller's expense. Defective materials shall not be replaced by Seller unless authorized to do so in writing by Buyer.

In settlement of any and all claims by Seller, in event of cancellation by Buyer and except where cancellation is for Seller's default, Buyer shall pay Seller the amount of its actual expenditures for labor and material incurred prior to such cancellation, plus its reasonable overhead, and a reasonable rate of profit on such expenditures and overhead, less the value of such material otherwise disposable, plus its other continuations costs, reasonably and necessarily incurred, and thereupon any remaining material in the hands of Seller which is not otherwise disposable shall become the property of Buyer.

Buyer shall have the right to make from time to time, changes as to packing, testing, destination, specifications, designs, and delivery schedule (postponements only). Seller shall immediately notify Buyer of any increases or decreases in costs caused by such changes and an equitable adjustment in prices or other terms thereof shall be agreed upon in a written amendment to this purchase order.

The particulars of performance, not otherwise set forth in this purchase order, shall be specified by Buyer.

All risk of loss or damage to the merchandise sold hereunder rests with Seller until Buyer obtains possession of the merchandise sold hereunder.

This purchase order is nonassignable by Seller and only Seller can perform the duties required of it hereunder.

This purchase order shall be deemed to be made in, and shall be governed by, the law of the State of Illinois.

Except to the extent this order is exempted therefrom, the Equal Employment Opportunity clause required by Section 202 of Executive Order 11246, Executive Order 11375, the VEVRAA of 1974, Section 503 of the Vocational Rehabilitation Act of 1973, the Civil Rights Act of 1991, and the ADA of 1990 is amended, are incorporated herein by specific reference.