WDS/JTA                    08415-08001                    #1819573

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

VISCOFAN USA, INC.,

        Plaintiff,

v.

FLINT INK WINSCHOTEN B.V.

        Defendant.

Case No. 08 C 02066

TRIAL BY JURY DEMANDED

## FLINT INK WINSCHOTEN B.V.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT

Defendant, Flint Ink Winschoten B.V. ("Flint"), by its attorneys, Johnson & Bell, Ltd. and William D. Serritella and Joann T. Angarola, in answer to plaintiff's amended complaint, states as follows:

1.      Plaintiff VISCOFAN USA, INC. ("VISCOFAN") makes and distributes artificial meat casings. VISCOFAN is a Delaware corporation, with operations in Alabama and Illinois. On January 1, 2008, VISCOFAN merged with TEEPAK LLC, a limited liability company with its principal place of business in Danville, Illinois. TEEPAK also made and distributed artificial casings for meat products. VISCOFAN is the successor to the rights that TEEPAK asserts herein. VISCOFAN and TEEPAK are collectively referred to in this Complaint as "TEEPAK."

**RESPONSE**:    Flint admits that Teepak made and distributed artificial casings for meat products at its facility in Danville, Illinois. Flint is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1 of the amended complaint and, therefore, denies those allegations at this time.

2.      Defendant FLINT INK WINSCHOTEN B.V. ('FLINT INK") is a citizen of the Netherlands. FLINT INK manufactures printing inks and pigments. FLINT INK maintains its headquarters in Winschoten, the Netherlands. FLINT INK is a member of FLINT GROUP, which is headquartered in Luxembourg and has operations in more than 170 locations in North, Central and South America, Europe, the Middle East, Africa, Australia,

New Zealand, India and the Pacific Rim. At all relevant times, FLINT INK solicited sales and sold ink and ink-related products to TEEPAK, a resident of Illinois.

**RESPONSE**:    Flint admits the allegations contained in Paragraph 2 of the amended complaint and further states that Flint Group SA is the correct name of the company of which Flint Ink Winschoten B.V. is a subsidiary.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over the parties and the subject matter of this action, because the claims asserted in this Complaint arose out of acts and transactions that occurred in Illinois. As described more fully below:

    a.    At all relevant times, TEEPAK was a resident of Illinois;

    b.    TEEPAK sent purchase orders to FLINT INK from its facility in Danville, Illinois;

    c.    FLINT INK shipped the ink to TEEPAK's facility in Danville, Illinois;

    d.    FLINT INK sent invoices for the ink to TEEPAK's facility in Danville, Illinois;

    e.    FLINT INK made telephone calls to and received telephone calls from TEEPAK's facility in Danville, Illinois;

    f.    FLINT INK sent correspondence regarding the composition and quality of the ink to TEEPAK in Danville, Illinois;

    g.    the ink that TEEPAK purchased from FLINT INK was used in Illinois;

    g. [sic] a FLINT GROUP North American account executive visited TEEPAK's facility in Danville, Illinois on behalf of FLINT INK to discuss the problems with the ink.

**RESPONSE**:    Flint admits that this Court has jurisdiction over the parties and the subject matter of this action.  Flint denies the claims asserted in this amended complaint arose out of acts and transactions that occurred only in Illinois.

    a.    Flint admits the allegations contained in Paragraph 3(a) of the amended complaint.

b.    Flint admits the allegations contained in Paragraph 3(b) of the amended complaint.

c.    Flint admits the allegations contained in Paragraph 3(c) of the amended complaint.

d.    Flint admits the allegations contained in Paragraph 3(d) of the amended complaint.

e.    Flint admits the allegations contained in Paragraph 3(e) of the amended complaint.

f.    Flint admits that it sent correspondence to Teepak regarding the ink and further states that the correspondence speaks for itself.

g.    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 3(g) of the amended complaint, and, therefore, denies those allegations at this time.

g. [sic] Flint admits that an account executive visited Teepak's facility in Danville.

4.    Venue is proper here because TEEPAK resides in Danville and the transactions giving rise to the claims occurred here.

**RESPONSE**:    Flint admits that venue is proper.  Flint denies that the transactions alleged in plaintiff's complaint occurred only in Illinois.

## FACTUAL BACKGROUND

5.    TEEPAK manufactures cellulose and fibrous meat casings at its plant in Danville, Illinois. TEEPAK supplied red-dyed skinless casings to several customers that operate in the Philippines including, among others, Mekeni Food Corporation ("Mekeni") and Purefoods. At the request of these customers, TEEPAK printed product information on the casings using white ink specially suited for that purpose.

3

**RESPONSE**:  Flint admits that Teepak manufactures cellulose and fibrous meat casings at its plant in Danville, Illinois.  Flint is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 5 of the amended complaint, and therefore, denies those allegations at this time.

6.    In the Philippines, it is common for vendors to freeze cased sausages in the evening and thaw them in the morning each day until they are sold to the final customer. The ink used on the casings must be able to withstand the resulting temperature changes.

**RESPONSE**:  Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 6 of the amended complaint, and therefore, denies those allegations at this time.

7.    Before 1997, TEEPAK printed product information on its red-dyed skinless casings using an ink manufactured and sold by Sun Chemical. Sun Chemical's ink proved to be unsatisfactory for use in the Phillipines, because the ink flaked off of the casings when they were subjected to repeated freezing and thawing.

**RESPONSE**:  Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the amended complaint, and therefore, denies those allegations at this time.

8.    In an effort to find an ink that would stay on the casings during the freeze-and-thaw cycles, TEEPAK contacted several ink manufacturers and tested numerous ink samples.

**RESPONSE**:  Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the amended complaint, and therefore denies those allegations at this time.

9.    In 1997, TEEPAK's Czechoslovakian sister facility recommended that TEEPAK try an ink manufactured in Vienna, Austria (the "Original Formula") by Gebr. Schmidt Druckfarben ("Schmidt"), a company which subsequently merged with FLINT INK.

**RESPONSE**:  Flint denies that Schmidt Druckfarben merged with Flint Ink Winschoten B.V.  Flint is without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in Paragraph 9 of the amended complaint, and

therefore, denies those allegations at this time.

10.     TEEPAK contacted Schmidt, explained its need for ink that could be used in the Philippines, and asked Schmidt for its help. See May 2, 1997 Letter (attached as Exhibit A). In response, Schmidt sent samples of the Original Formula to the Danville plant.

**RESPONSE**:     Flint admits only that Exhibit "A" to the amended complaint purports

to be a letter from Devro/Teepak to Dr. Henker Gebr-Schmidt, dated May 2, 1997. Flint is

without knowledge or information sufficient to form a belief as to the truth of the remaining

allegations contained in Paragraph 10 of the amended complaint, and therefore, denies those

allegations at this time.

11.     TEEPAK tested the Original Formula, and found that it maintained its adhesive properties during the freeze-and-thaw process.

**RESPONSE**:     Flint is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 11 of the amended complaint, and

therefore, denies those allegations at this time.

12.     As a result, TEEPAK contacted Schmidt to buy the Original Formula. Initially, Schmidt offered to supply a different type of ink from its plant in Frankfurt, Germany, but TEEPAK refused the offer, and explained to Schmidt that the Frankfurt ink was not suitable for use on casings sold in the Asian market.

**RESPONSE**:     Flint is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 12 of the amended complaint, and

therefore, denies those allegations at this time.

13.     Schmidt thereafter agreed to sell the Original Formula to TEEPAK. TEEPAK and Schmidt entered into a series of contracts, pursuant to which Schmidt sold the Original Formula to TEEPAK for use on the Asian casings.

**RESPONSE**:     Flint is without knowledge or information sufficient to form a belief

as to the truth of the allegations contained in Paragraph 13 of the amended complaint, and

therefore, denies those allegations at this time.

14.    TEEPAK used the Original Formula on red-dyed skinless casings sold to customers in Asia without incident for several years. The Original Formula was well suited for that purpose.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 14 of the amended complaint, and therefore, denies those allegations at this time.

15.    In or about 2000, Schmidt began supplying an ink that was different from the Original Formula, without TEEPAK's knowledge. The new formula did not maintain its adhesive properties during the freeze-and-thaw process. When TEEPAK discovered that Schmidt had provided a different ink, it notified Schmidt of the problem, explained that the casings on which the ink was applied were subject to the freeze-and-thaw process in Asia and that the new formula was not suited for that use. See April 19, 2000 Email (attached as Exhibit B). TEEPAK requested that Schmidt resume selling the Original Formula. Schmidt agreed to make the Original Formula product for TEEPAK as a special order product.

**RESPONSE**:    Flint admits only that Exhibit "B" to the amended complaint purports to be an e-mail from Douglas E. Appleby, dated April 19, 2000. Flint is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 15 of the amended complaint, and therefore, denies those allegations at this time.

16.    TEEPAK submitted approximately six purchase orders to Schmidt annually for the Original Formula. The purchase orders were issued from TEEPAK's facility in Danville, Illinois. Schmidt filled each order as requested and sold the Original Formula to TEEPAK. The Original Formula continued to work well for use in the Asian market.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the amended complaint, and therefore, denies those allegations at this time.

17.    Upon information and belief, Schmidt merged with FLINT INK'S European Operations in 2002. FLINT INK knew about the special purpose for which TEEPAK used the Original Formula, and they continued to sell TEEPAK the Original Formula.

**RESPONSE**:    Flint denies that Schmidt merged with Flint Ink's European Operations in 2002. Flint admits that Schmidt and Flint Ink Winschoten B.V. are affiliated companies. Flint has insufficient knowledge or information to form a belief as to the truth of

6

the remaining allegation contained in Paragraph 17 of the amended complaint, and therefore, denies those allegations at this time.

18.    In the May of 2005, TEEPAK submitted a purchase order for the Original Formula to FLINT INK (the "May 2005 Purchase Order") (attached as Exhibit C) (copies of all purchase orders reflect the merger between Teepak and Viscofan). When the ink from FLINT INK arrived at the Danville plant, the labels on the ink were different than the labels on the Original Formula, and the identification numbers differed from those on the Original Formula. TEEPAK learned that ink sent by FLINT INK in May 2005 had been manufactured at a plant in the Netherlands, rather than the FLINT INK's Austrian facility where the Original Formula had been manufactured.

**RESPONSE**:    Flint admits that Viscofan submitted a purchase order consisting of one page via facsimile for the purchase of ink in May of 2005 and further states that the purchase order speaks for itself. Flint denies that the document attached as part of Exhibit C entitled "other terms and conditions" was part of the purchase order and denies that it accepted the provision contained in "other terms and conditions." Flint admits the remaining allegations contained in Paragraph 18 of the amended complaint.

19.    When TEEPAK learned that the ink had been manufactured in the Netherlands, TEEPAK contacted a FLINT GROUP North American account executive in Michigan and asked about whether the ink (the "New Ink") it had received was still the Original Formula. The FLINT GROUP account executive, acting on behalf of FLINT INK, represented that the ink formula had not changed. As a result, and in reliance on the account executive's representation, TEEPAK began using the New Ink.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 19 of the amended complaint.

20.    When TEEPAK applied the New Ink to the casings, the New Ink was more difficult to apply. The New Ink dried faster than the Original Formula and it stuck to the plates on the printing press and filled the analox rollers.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 20 of the amended complaint, and therefore, denies those allegations at this time.

21.    TEEPAK notified a FLINT GROUP North American representative of the drying problem. In response, the representative, acting on behalf of FLINT INK, recommended that TEEPAK use a chemical agent to slow the drying process. The representative did not disclose that there had been a change to the ink formula.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21 of the amended complaint, and therefore, denies those allegations at this time.

22.    TEEPAK followed the FLINT GROUP representative's recommendation to use a chemical agent to slow the drying process, but continued to have problems applying the New Ink. Among other things, TEEPAK was forced to apply solvent to the casing/plate interface whenever the press stopped to avoid sticking problems, brush down the analox rollers every four hours to remove ink buildup, and remove and clean the printing drum three to four times per shift. TEEPAK did not experience these problems with the Original Formula. Despite these manufacturing problems, however, the New Ink appeared to adhere to the casings.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 22 of the amended complaint, and therefore, denies those allegations at this time.

23.    In reliance on FLINT INK's representations that the Original Formula had not been modified, TEEPAK continued to purchase ink from FLINT INK. TEEPAK submitted six more purchase orders for the Original Formula on the following dates: July 14, 2005 (attached as Exhibit D); October 3, 2005 (attached as Exhibit E), November 3, 2005 (attached as Exhibit F); August 9, 2006 (attached as Exhibit G); August 31, 2006 (attached as Exhibit H); and September 28, 2006 (attached as Exhibit I) (collectively, the "Subsequent Purchase Orders"). FLINT INK accepted the Subsequent Purchase Orders and supplied TEEPAK with New Ink. The ink that FLINT INK supplied in late 2005 and 2006 was difficult to apply.

**RESPONSE**:    Flint admits that Teepak submitted, via facsimile, six one-page purchase orders, copies of which are attached to plaintiff's amended complaint as parts of Exhibits "C" through "I". Flint denies that the purchase orders included the page entitled "other terms and conditions" contained in Exhibits "C" through "I" to plaintiff's amended complaint and denies that it accepted the provisions contained in "other terms and conditions." Flint further admits that it delivered ink to Teepak. Flint is without knowledge

or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 23 of the amended complaint, and therefore, denies those allegations at this time.

24.     In the summer of 2006, TEEPAK received quality complaints from Mekeni and Purefoods that ink was flaking and peeling off of the casings. These customers submitted claims for damages to TEEPAK, and TEEPAK began to investigate the claims.

**RESPONSE**:     Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 24 of the amended complaint, and therefore, denies those allegations at this time.

25.     In the fall of 2006, TEEPAK conferred with John Kerscher, FLINT GROUP's Midwest Regional Technical Service Manager, regarding the application problems and customer complaints. Mr. Kerscher sent TEEPAK suggestions regarding the additive specifications. Mr. Kerscher did not disclose that there had been a change in the ink formula.

**RESPONSE**:     Flint admits that Teepak conferred with John Kerscher regarding additives to the ink and that Mr. Kerscher sent information to Teepak regarding additive specifications.  Flint is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 25 of the amended complaint, and therefore, denies those allegations at this time.

26.     Throughout the fall of 2006, TEEPAK continued to receive complaints from its customers. In early 2007, TEEPAK received a claim for damages from Mekeni. Unable to solve the adhesion problem, TEEPAK stopped using FLINT INK's ink.

**RESPONSE**:     Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 26 of the amended complaint, and therefore, denies those allegations at this time.

27.     In February 2007, TEEPAK contacted Charlie Molicki, a FLINT GROUP North American account executive who had an office in Carol Stream, Illinois, regarding the customer complaints that TEEPAK had received. Mr. Molicki visited the Danville plant on February 26, 2007. TEEPAK employees reviewed the printing process with Mr. Molicki and provided to him samples of the ink for testing by FLINT INK.

**RESPONSE**:    Flint admits the allegations contained in Paragraph 27 of the amended complaint.

28.    TEEPAK gave Mr. Molicki a letter, dated February 23, 2007, seeking reimbursement for the claims that it had received from its customers up until that time. Mr. Molicki advised that copies of the letter should be sent to FLINT INK and TEEPAK mailed copies to the individuals that Mr. Molicki identified.

**RESPONSE**:    Flint admits the allegations contained in Paragraph 28 of the amended complaint.

29.    After TEEPAK submitted the claims, FLINT INK reported that it tested the ink, but concluded that there was no deviation in the quality or composition of the ink, and that the flaking problem was not the result of any modification to the Original Formula. FLINT INK did not provide TEEPAK with any analysis related to its testing.

**RESPONSE**:    Flint Ink admits that after Teepak submitted claims, Flint Ink tested the ink and substrate provided by Teepak on which the ink was applied for quality purposes. Flint denies that it performed tests to determine to composition of the ink. Flint admits that it concluded that the ink provided by Teepak met its quality control standards.

30.    In the summer of 2007, TEEPAK proposed that the parties conduct a joint test using casings from 2000 through 2007 to determine whether the ink formula had changed in 2005. FLINT INK had the only remaining ink samples from that time period. FLINT INK initially agreed to provide these samples and to participate in the testing. TEEPAK arranged to send one of its chemists to FLINT INK'S plant in the Netherlands, but FLINT INK subsequently cancelled the tests.

**RESPONSE**:    Flint admits that Teepak proposed a joint test to determine if there was a deviation in quality or composition and that Teepak arranged to send a chemist to Flint's plant in the Netherlands. Flint avers that the proposed test was cancelled due to lack of suitable product in sufficient quantity to conduct meaningful tests. Flint denies all remaining allegations not expressly admitted.

31.    FLINT INK has refused to reimburse TEEPAK for any damage claims from its customers.

**RESPONSE**:    Flint admits that it has refused to pay Teepak for claims that it believes are unsubstantiated and without merit.

## COUNT I:  BREACH OF CONTRACT

32.    TEEPAK incorporates by reference the allegations stated in paragraphs 1-31 of the Amended Complaint.

**RESPONSE**:    Flint incorporates by reference its responses to Paragraphs 1-31 of the amended complaint.

33.    In 2005 and 2006, TEEPAK and FLINT INK entered into contracts pursuant to which FLINT INK agreed to sell Original Formula to TEEPAK. (See Exhibits C-I).

**RESPONSE**:    Flint admits that in 2005 and 2006, it entered into contracts with Viscofan for the sale of ink.  Flint denies that those portions of Exhibits "C" through "I" entitled "other terms and conditions" were part of any purchase orders sent to it and constituted any contract between it and Teepak.  Flint further denies all other allegations not expressly admitted.

34.    FLINT INK breached the contracts by failing to provide TEEPAK with the Original Formula, instead delivering to TEEPAK the New Ink.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 34 of the amended complaint.

35.    As a direct and proximate result of FLINT INK's failure to provide the Original Formula, TEEPAK has incurred losses and costs in excess of $2 million, including, without limitation, reimbursing its customers for their claims, lost profits, the expense of stock that could not be used, and additional costs of manufacturing.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 35 of the amended complaint.

WHEREFORE, defendant, Flint Ink Winschoten B.V. denies that plaintiff is entitled to a judgment against it in any amount whatsoever, and prays that Count I of the amended complaint be dismissed, with costs assessed against the plaintiff.

## COUNT II:  BREACH OF WARRANTY OF FITNESS
## FOR A PARTICULAR PURPOSE

36.    TEEPAK incorporates by reference the allegations stated in paragraphs 1-35 of the Amended Complaint.

**RESPONSE**:    Flint incorporates by reference its responses to Paragraphs 1-35 of the amended complaint.

37.    At the time of the sales in 2005 and 2006, FLINT INK knew or had reason to know that TEEPAK intended to use the ink on casings that would be subjected to the freeze-and thaw process.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 37 of the amended complaint, and therefore, denies those allegations at this time.

38.    TEEPAK relied on FLINT INK's expertise and skill as the ink manufacturer to furnish an ink that would withstand the freeze-and-thaw process, as FLINT INK had done successfully in the past.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 38 of the amended complaint, and therefore, denies those allegations at this time.

39.    FLINT INK failed to furnish ink that was fit to withstand the freeze-and-thaw process and thereby by breached its warranty of fitness for a particular purpose.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 39 of the amended complaint.

40.    TEEPAK suffered damage as a result of FLINT INK's failure to furnish suitable ink.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 40 of the amended complaint.

WHEREFORE, defendant, Flint Ink Winschoten B.V. denies that plaintiff is entitled to a judgment against it in any amount whatsoever, and prays that Count II of the amended complaint be dismissed, with costs assessed against the plaintiff.

## COUNT III: NEGLIGENT MISREPRESENTATION

41.    TEEPAK incorporates by reference the allegations stated in paragraphs 1-40 of the Amended Complaint.

**RESPONSE**:    Flint incorporates by reference its responses to Paragraphs 1-40 of the amended complaint.

42.    As the ink manufacturer, FLINT INK was in a unique position to know the composition of the ink that it supplied to TEEPAK in response to the May 2005 and Subsequent Purchase Orders. FLINT INK had a duty to provide TEEPAK with accurate information regarding the product.

**RESPONSE**:    Paragraph 42 of the amended complaint alleges legal conclusions to which no answer is required.   Subject to its objection, Flint avers that it fulfilled all duties imposed upon it by law.

43.    Despite TEEPAK's repeated inquiries regarding the composition of the ink, FLINT INK and FLINT GROUP employees acting on behalf of FLINK INK, represented that the ink that it supplied in 2005 and 2006 was the same as the Original Formula.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 43 of the amended complaint, and therefore, denies those allegations at this time.

44.    FLINT INK's representations regarding the composition of the ink were false.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 44 amended complaint.

45.    FLINT INK intended TEEPAK to rely on FLINT INK's representations regarding the formulation of the ink to induce TEEPAK to continue purchasing FLINT INK's products.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 45 of the amended complaint.

46.    FLINT INK was negligent in determining whether the ink that supplied to TEEPAK in 2005 and 2006 was the Original Formula.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 46 of the amended complaint.

47.    TEEPAK relied on FLINT INK's representations that the ink was the Original Formula when it purchased and used the ink in 2005 and 2006.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 47 of the amended complaint.

48.    TEEPAK was damaged as a result of relying on FLINT INK's representations regarding the composition and qualities of the ink that it purchased in 2005 and 2006.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 48 of the amended complaint.

WHEREFORE, defendant, Flint Ink Winschoten B.V. denies that plaintiff is entitled to a judgment against it in any amount whatsoever, and prays that Count III of the amended complaint be dismissed, with costs assessed against the plaintiff.

## COUNT IV: FRAUD

49.    TEEPAK incorporates by reference the allegations stated in paragraphs 1-48 of the Amended Complaint.

**RESPONSE**:    Flint incorporates by reference its responses to paragraphs 1-48 of plaintiff's amended complaint.

50.    FLINT INK and FLINT GROUP employees acting on behalf of FLINT INK, represented that the ink that it supplied to TEEPAK in 2005 and 2006 was the Original Formula.

**RESPONSE**:    Flint is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 50 of the amended complaint, and therefore, denies those allegations at this time.

51.    FLINT INK's representations regarding the composition of the ink were false.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 51 of the amended complaint.

52.    FLINT INK intended TEEPAK to rely on these representations regarding the formulation of the ink to induce TEEPAK to continue purchasing its products.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 52 of the amended complaint.

53.    FLINT INK knew that the formula for the ink it was selling was not the same as the Original Formula.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 53 of the amended complaint.

54.    TEEPAK relied on FLINT INK's representation that the ink was the Original Formula when it purchased and used the ink in late 2005 and 2006.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 54 of the amended complaint.

55.    TEEPAK was damaged as a result of relying on FLINT INK's representations regarding the composition and quality of the ink that it purchased in late 2005 and 2006.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 55 of the amended complaint.

WHEREFORE, defendant, Flint Ink Winschoten B.V. denies that plaintiff is entitled to a judgment against it in any amount whatsoever, and prays that Count IV of the amended complaint be dismissed, with costs assessed against the plaintiff.

## COUNT V:  ILLINOIS CONSUMER FRAUD AND TRADE PRACTICES ACT

56.    TEEPAK incorporates by reference the allegations stated in paragraphs 1-55 of the amended complaint.

**RESPONSE**:    Flint incorporates by reference its responses to paragraphs 1-55 of plaintiff's amended complaint.

57.    By engaging in the conduct set forth in paragraphs 1-55, FLINT INK engaged in deceptive acts or practices in violation of Section 505/2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 57 of the amended complaint.

58.    TEEPAK has suffered substantial injury as a result of FLINT INK's violation of the Illinois Consumer Fraud and Deceptive Business Practices Act.

**RESPONSE**:    Flint denies the allegations contained in Paragraph 58 of the plaintiff's amended complaint.

WHEREFORE, defendant, Flint Ink Winschoten B.V. denies that plaintiff is entitled to judgment against it in any amount whatsoever, and prays that Count V of the amended complaint be dismissed, with costs assessed against the plaintiff.

## AFFIRMATIVE DEFENSES

As and for its affirmative defenses, and without prejudice to its denials stated above, Flint states as follows:

## FIRST AFFIRMATIVE DEFENSE

1.    Each sale of ink from May 25, 2005 to September 28, 2006, was governed by and subject to the Uniform Conditions of Sale and Delivery for Paint, Printing Ink, and Other Products, as stated in Flint's invoices from June 6, 2005 to October 12, 2006.  These invoices are attached as Exhibits "A" through "G".

16

2.     Article 10, §4 of the Uniform Conditions of Sale and Delivery for Paint, Printing Ink and Other Products states:

> Complaints about the quality of the delivered goods may only be made within 14 days of the purchaser discovering that the goods are faulty, and in any case never more than six months after the delivery of the goods.  If a best-before date less than six months away is given on the packaging, any complaints must be submitted before that date.

A copy of the Uniform Conditions of Sale and Delivery for Painting, Printing Ink and Other Products is attached as Exhibit "H".

3.     Plaintiff failed to notify Flint of any alleged flaking of the ink sold and delivered to it within six months after delivery of the ink.

4.     Pursuant to Article 10, § 4 of the Uniform Conditions of Sale and Delivery for Painting, Printing Ink and Other Products, plaintiff's complaint is time barred.

WHEREFORE, defendant, Flint Ink Winschoten B.V. prays for entry of a judgment in its favor and against the plaintiff on all counts of the amended complaint

## SECOND AFFIRMATIVE DEFENSE

1.     Flint realleges Paragraph 1 of its First Affirmative Defenses as though fully set forth herein.

2.     Article 10, § 7 of the Uniform Conditions of Sale and Delivery for Paint, Printing Ink and Other Products, states as follows:

> The compensation for which the seller can be held liable for the delivery of faulty goods, for documentation, processing advice and other advice, supervision and inspection, will never exceed 3 ½ times the invoice amount for delivered goods which have been found to be faulty.  The seller is never liable for any form of consequential loss, whatever it is called and however it is caused.

3.      Without prejudice to its denials or other statements in its pleadings, Flint states that in the event a trier of fact determines that Flint is liable to the plaintiff, which liability is denied, plaintiff's recovery cannot exceed three and a half times the invoice amount of the ink delivered and found faulty.

WHEREFORE, defendant, Flint Ink Winschoten B.V. prays that in the event a trier of fact determines that it is liable to plaintiff, which liability is denied, that plaintiff's recovery be limited to three and a half times the invoiced amount of the ink delivered and found faulty.

### THIRD AFFIRMATIVE DEFENSE

Without prejudice to its denials or other statements in its pleadings, Flint states, on information and belief, that the plaintiff's claimed damages were aggravated by plaintiff's failure to exercise reasonable care to mitigate any claimed damages.

WHEREFORE, defendant, Flint Ink Winschoten B.V. prays that in the event a trier of fact determines that Flint Ink Winschoten B.V. is liable to the plaintiff, which liability is denied, the plaintiff's recovery be reduced in an amount commensurate with the relative fault of plaintiff in causing or failing to prevent its own damages.

### FOURTH AFFIRMATIVE DEFENSE

Count I of the amended complaint is insufficient as a matter of law, and fails to state a claim upon which relief may be granted.

WHEREFORE, defendant, Flint Ink Winschoten B.V. prays that judgment be entered in its favor and against the plaintiff on Count I of the amended complaint, together with costs of suit.

### FIFTH AFFIRMATIVE DEFENSE

Count II of the amended complaint is insufficient as a matter of law, and fails to state a claim upon which relief may be granted.

WHEREFORE, defendant, Flint Ink Winschoten B.V. prays that judgment be entered in its favor and against the plaintiff on Count II of the amended complaint, together with costs of suit.

### SIXTH AFFIRMATIVE DEFENSE

Count III of the amended complaint is insufficient as a matter of law, and fails to state a claim upon which relief may be granted.

WHEREFORE, defendant, Flint Ink Winschoten B.V. prays that judgment be entered in its favor and against the plaintiff on Count III of the amended complaint, together with costs of suit.

### SEVENTH AFFIRMATIVE DEFENSE

Count IV of the amended complaint is insufficient as a matter of law, and fails to state a claim upon which relief may be granted.

WHEREFORE, defendant, Flint Ink Winschoten B.V. prays that judgment be entered in its favor and against the plaintiff on Count IV of the amended complaint, together with costs of suit.

### EIGHTH AFFIRMATIVE DEFENSE

Count V of the amended complaint is insufficient as a matter of law, and fails to state a claim upon which relief may be granted.

WHEREFORE, defendant, Flint Ink Winschoten B.V. prays that judgment be entered in its favor and against the plaintiff on Count V of the amended complaint, together with costs of suit.

JOHNSON & BELL, LTD.

By _/s/ William D. Serritella_____
William D. Serritella
Attorneys for FLINT INK

William D. Serritella
Joann T. Angarola
JOHNSON & BELL, LTD.
33 West Monroe Street
Suite 2700
Chicago, IL 60603
(312) 372-0770
Firm ID No.:  06347

## CERTIFICATE OF SERVICE

The undersigned certifies that he caused to be served the foregoing Flint Ink Winschoten B.V.'s Answer and Affirmative Defenses to Plaintiff's Amended Complaint to the attorney listed below:

**Steven H. Hoeft**
**McDermott Will & Emery LLP**
**227 West Monroe Street**
**Chicago, IL 60606**

by placing a true and correct copy thereof in a sealed envelope addressed as aforesaid, with postage prepaid, and depositing same in the United States mail box located at 33 West Monroe Street, Chicago, Illinois at or before 5:00 p.m. on the 14th day of April, 2008.

/s/ William D. Serritella
[x]    Under penalties as provided by law pursuant to 735 ILCS 5/1-109 of the Code of Civil Procedure I certify that the statements set forth herein are true and correct.

**E-FILED**
Monday, 14 April, 2008  03:40:01 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT A

# Invoice

**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

## FLINT-SCHMIDT

Liquid Packaging Division
Lijnbaan 8
9672 BL Winschoten
The Netherlands
Mail address: P.O.Box 86
9670 AB Winschoten
The Netherlands

Phone  +31 (0) 597 415653
Fax    +31 (0) 597 420216

IC - 835

Flint Ink Winschoten B.V.

A Member of the Flint-Schmidt Group

ABN Amro Bank N.V.

Accountnr.: 63.96.08.660
IBAN Nr.   NL93ABNA0629608660
Swiftcode:: ABNANL2A

VAT Nr.   NL800287289806

Page No         1

| | | |
|---|---|---|
| Invoice | 3582545 | Delivery Note No | 5069023/ 1 |
| Customer | 581881 | Delivery Date | 03/06/05 |
| Date | 06/06/05 | Customer Order No | 25003223 |
| | | Customer VAT No | |

| Code / Description | Quantity | UOM | Price Unit | Line Net |
|---|---|---|---|---|
| WF-674-10048 | 600.000 | KG | 5.90 | |
| WAFLEX WHITE 16 WA 0010 DA/R | 1 | | | 3540.00 |
| stnr 3215.1900 | | | | |

The exporter of the products covered by this document
(customs authorisation No NL/418/03/1146) declares that,
except where otherwise clearly indicated, these products
are of EC preferential origin.

No pails:       60

| NL | Douane Noord 418 |
|---|---|
| 5069023 | 6-06-05 |
| Flint Ink Winschoten b.v. | 0000994 |

" Vereenvoudigde uitvoer "

| | |
|---|---|
| Commodity Code | Goods Value      3540.00 |
| | Charges          0.00 |
| | Taxable Total    3540.00 |
| Country of Origin : | VAT at    %      0.00 |
| | Amount Payable  USD   3540.00 |

Total Weights    :    Net   600.000 KG    Gross   630.000 KG

Delivery Terms   :    Ex Works
                      EXW..

Payment Terms    :    30 Days from date of invoice

Delivery Method  :    By Ship

The goods covered by this invoice remain our property until payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02300576
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court
(Arrondissementrechtsbank te Amsterdam). Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the uniform Sales Conditions.

E-FILED
Monday, 14 April, 2008  03:40:16 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT B

## Invoice

**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

**▲ FLINT-SCHMIDT**

TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

| Liquid Packaging Division | Flint Ink Winschoten B.V. |
|---|---|
| Lübsean 6' | A Member of the Flint-Schmidt Group |
| 9672 BL Winschoten | |
| The Netherlands | ABN Amro Bank N.V. |
| Mail address: P.O.Box 86 | The Netherlands |
| 9670 AB Winschoten | |
| The Netherlands | Account Nr. 62 96 08 860 |
| Phone  +31 (0) 597 416853 | IBAN Nr.  NL60ABNA0629506860 |
| Fax  +31 (0) 597 420216 | Swiftcode:: ABNANL2A |
| IC - 636 | VAT Nr.  NL800287289805 |

Page No                    1

| Invoice | 3585340 | Delivery Note No | 5083635/  1 |
|---|---|---|---|
| Customer | 581881 | Delivery Date | 07/11/05 |
| Date | 07/11/05 | Customer Order No | 25004193 |
| | | Customer VAT No | |

| Code<br>Description | Quantity | UOM | Price<br>Unit | Line Net |
|---|---|---|---|---|
| WF-699-M2147 | 40.000 | KG | 8.44 | |
| ANTIFOAM SPRAY | | | | 337.60 |
| stnr 3814.0090 | | | | |

SHIP VIA AIR
THRU YUSEN AIR & SEA SERVICES

The exporter of the products covered by this document
(customs authorisation No NL/418/03/1146) declares that,
except where otherwise clearly indicated, these products
are of EC preferential origin.

No palls:          4

| NL | Douane Noord 418 | |
|---|---|---|
| 5083635 | 7-11-05 | |
| Flint Ink Winschoten b.v. | | 0000994 |
| " Vereenvoudigde uitvoer " | | |

| | | |
|---|---|---|
| Commodity Code | Goods Value | 337.60 |
| | Charges | 0.00 |
| | Taxable Total | 337.60 |
| Country of Origin : | VAT at      % | 0.00 |
| | Amount Payable  USD | 337.60 |

| Total Weights : | Net  40.000 KG | Gross  42.000 KG |
|---|---|---|
| Delivery Terms : | Ex Works<br>EXW.. | |
| Payment Terms : | 30 Days from date of invoice | |
| Delivery Method : | By Ship | |

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02300576
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court
(Arrondissementsrechtbank te Amsterdam). Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the uniform Sales Conditions.

# Invoice

**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

**TEEPAK, LLC**
**915 NORTH MICHIGAN AVE**
**DANVILLE, IL 61832-0597**

USA

## FLINT-SCHMIDT

Liquid Packaging Division
Lijnbaan 6
9672 BL Winschoten
The Netherlands
Mail address: P.O.Box 86
9670 AB Winschoten
The Netherlands

Phone  +31 (0) 597 416653
Fax      +31 (0) 597 420216

IC - 526

Flint Ink Winschoten B.V.
A Member of the Flint-Schmidt Group

ABN Amro Bank N.V.
The Netherlands

Account Nr. 62 96 08 660
IBAN Nr.   NL80ABNA0629608660
Swiftcode:: ABNANL2A

VAT Nr.   NL800287289805

Page No          1

| | | |
|---|---|---|
| Invoice | 3583433 | Delivery Note No 5073449/ 1 |
| Customer | 581881 | Delivery Date 22/07/05 |
| Date | 22/07/05 | Customer Order No 25004193 |
| | | Customer VAT No |

| Code Description | Quantity UOM | Price Unit | Line Net |
|---|---|---|---|
| WF-674-10048 WAFLEX WHITE 15 WA 0010 DA/R stnr 3215,1900 | 1000.000    KG 1 | 5.90 | 5900.00 |
| WF-699-M1896 FLUCOLINE ACTIVATOR 99HP191 / stnr 3814.0090 | 99.000    KG 1 | 41.20 | 4078.80 |

SHIP VIA AIR
THRU YUSEN AIR & SEA SERVICE

| NL | Douane Noord 418 | |
|---|---|---|
| 5073449 | 22-07-05 | |
| Flint Ink Winschoten b.v. | 0000994 | |

" Vereenvoudigde uitvoer "

The exporter of the products covered by this document
(customs authorisation No NL/418/03/1146) declares that,
except where otherwise clearly indicated, these products
are of EC preferential origin.

No pails          110

| | |
|---|---|
| Commodity Code | Goods Value     9978.80 |
| | Charges     0.00 |
| | Taxable Total     9978.80 |
| Country of Origin : | VAT at     %     0.00 |
| | Amount Payable  USD     9978.80 |

Total Weights     :     Net  1099.000 KG     Gross  1209.000 KG

Delivery Terms     :     Ex Works
                                    EXW..

Payment Terms     :     30 Days from date of invoice

Delivery Method     :     By Ship

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02800576
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court
(Arrondissementsrechtsbank te Amsterdam). Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the uniform Sales Conditions.

E-FILED
Monday, 14 April, 2008  03:40:29 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT C

Invoice Copy

# FlintGroup

**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

Liquid Packaging Division

Lijnbaan 8
8872 DL Winschoten
The Netherlands
Mail address: P.O.Box 88
9870 AB Winschoten
The Netherlands

Phone +31 (0) 597 416853
Fax  +31 (0) 597 420216

IC - 535

Flint Ink Winschoten B.V.
A Member of the Flint Group

ABN Amro Bank N.V.
The Netherlands

AccountNr. 62 96 06 860
IBAN Nr.   NL80ABNA0629606860
Swiftcoder: ABNANL2A

VAT Nr.   NL800287289B05

Page No           1

| Invoice | 3584829 |
| Customer | 581881 |
| Date | 13/10/05 |

| Delivery Note No | 5081058/ 1 |
| Delivery Date | 12/10/05 |
| Customer Order No | 25005675 |
| Customer VAT No | |

| Code<br>Description | Quantity | UOM | Price<br>Unit | Line Net |
|---|---|---|---|---|
| WF-674-10048 | 1000.000 | KG | 5.90 | |
| WAFLEX WHITE 15 WA 0010 DA/R<br>stnr 3215.1900 | 1 | | | 5900.00 |

SHIP VIA AIR.
SHIP VIA YUSEN AIR & SER. SERVICE

| | | | |
|---|---|---|---|
| Commodity Code | | Goods Value | 5900.00 |
| | | Charges | 0.00 |
| | | Taxable Total | 5900.00 |
| Country of Origin : | | VAT at       % | 0.00 |
| | | Amount Payable  USD | 5900.00 |
| Total Weights   : | Net   1000.000 KG   Gross  1050.000 KG | | |
| Delivery Terms  : | Ex Works<br>EXW.. | | |
| Payment Terms   : | 30 Days from date of invoice | | |
| Delivery Method : | By Ship | | |

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02300876
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court
(Arrondissementsrechtbank te Amsterdam). Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the uniform Sales Conditions.

**E-FILED**
Monday, 14 April, 2008  03:40:45 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT D

Invoice Copy

# *Flint*Group

**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

| | | |
|---|---|---|
| Liquid Packaging Division | | Flint Ink Winschoten B.V. |
| Lijnbaan 8 | | A Member of the Flint Group |
| 9672 BL Winschoten | | |
| The Netherlands | | ABN Amro Bank N.V. |
| Mail address: P.O.Box 88 | | The Netherlands |
| 9670 AB Winschoten | | |
| The Netherlands | | AccountNr. 62 90 00 690 |
| | | IBAN Nr.   NL90ABNA0629000660 |
| Phone  +31 (0) 597 416853 | | Swiftcode: ABNANL2A |
| Fax    +31 (0) 597 420216 | | |
| | | VAT Nr.   NL800287289B05 |
| IC - 635 | | |

Page No          2

| | | | |
|---|---|---|---|
| Invoice | 3585385 | Delivery Note No | 5083570/ 1 |
| Customer | 581881 | Delivery Date | 08/11/05 |
| Date | 10/11/05 | Customer Order No | 25006301 |
| | | Customer VAT No | |

| Code | Quantity UOM | Price | Line Net |
|---|---|---|---|
| Description | | Unit | |

| | | | | | |
|---|---|---|---|---|---|
| Commodity Code | | | Goods Value | | 19450.00 |
| | | | Charges | | 0.00 |
| | | | Taxable Total | | 19450.00 |
| Country of Origin : | | | VAT at      % | | 0.00 |
| | | | Amount Payable  USD | | 19450.00 |
| Total Weights   : | Net  2100.000 KG | Gross  2205.000 KG | | | |
| Delivery Terms  : | Ex Works | | | | |
| | EXW.. | | | | |
| Payment Terms   : | 30 Days from date of invoice | | | | |
| Delivery Method  : | By Ship | | | | |

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02300576
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court
(Arrondissementsrechtsbank te Amsterdam). Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the Uniform Sales Conditions.

**E-FILED**
Monday, 14 April, 2008  03:40:58 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT E

Invoice Copy



**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

**TEEPAK, LLC**
**915 NORTH MICHIGAN AVE**
**DANVILLE, IL 61832-0597**

USA

Liquid Packaging Division

Lijnbaan 6
9672 BL Winschoten
The Netherlands
Mail address: P.O.Box 86
9670 AB Winschoten
The Netherlands

Phone  +31 (0) 597 416853
Fax    +31 (0) 597 420216

IC - 535

Flint Ink Winschoten B.V.

A Member of the Flint Group

ABN Amro Bank N.V.
The Netherlands

AccountNr. 62 96 08 660
IBAN Nr.   NL80ABNA0629608660
Swiftcode:: ABNANL2A

VAT Nr.   NL800287289B05

**Page No**            2

| | | |
|---|---|---|
| **Invoice** | 3593748 | **Delivery Note No** | 5104630/ 1 |
| **Customer** | 581881 | **Delivery Date** | 15/08/06 |
| **Date** | 15/08/06 | **Customer Order No** | 26003926 |
| | | **Customer VAT No** | |

| Code | Quantity | UOM | Price Unit | Line Net |
|---|---|---|---|---|
| Description | | | | |

| | | |
|---|---|---|
| **Commodity Code** | **Goods Value** | 5680.60 |
| | **Charges** | 0.00 |
| | **Taxable Total** | 5680.60 |
| **Country of Origin :** | **VAT at      %** | 0.00 |
| | **Amount Payable  USD** | 5680.60 |

**Total Weights** :    Net   578.000 KG    Gross   607.000 KG

**Delivery Terms** :    Ex Works
                       EXW..

**Payment Terms** :    30 Days from date of invoice

**Delivery Method** :    By Ship

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02300576
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court
(Arrondissementrechtsbank te Amsterdam). Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the uniform Sales Conditions.



**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

Liquid Packaging Division

Lijnbaan 6
9672 BL Winschoten
The Netherlands
Mail address: P.O.Box 86
9670 AB Winschoten
The Netherlands

Phone  +31 (0) 597 416853
Fax    +31 (0) 597 420216

IC - 535

Flint Ink Winschoten B.V.

A Member of the Flint Group

ABN Amro Bank N.V.
The Netherlands

AccountNr. 62 96 08 660
IBAN Nr.  NL80ABNA0629608660
Swiftcode:: ABNANL2A

VAT Nr.   NL800287289B05

Page No                    1

| | | |
|---|---|---|
| Invoice | 3593748 | |
| Customer | 581881 | |
| Date | 15/08/06 | |

Delivery Note No    5104630/ 1
Delivery Date        15/08/06
Customer Order No   26003926
Customer VAT No

| Code Description | Quantity | UOM | Price Unit | Line Net |
|---|---|---|---|---|
| WF-674-10048 WAFLEX WHITE 15 WA 0010 DA/R stnr 3215.1900 | 458.000 | KG | 5.90 | 2702.20 |
| WF-699-M2157 ANTIFOAM 90LAO190 stnr 3814.0090 | 60.000 | KG | 8.44 | 506.40 |
| WF-699-M1896 FLUCOLINE CROSSLINKER 99HP191 stnr 3814.0090 | 60.000 | KG | 41.20 | 2472.00 |

leverdatum 16 augustus

ship via air
ship via yusen air ans sea service

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.

Commercial Register Groningen Nr. 02300576

All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court (Arrondissementsrechtbank te Amsterdam). Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the uniform Sales Conditions.

E-FILED
Monday, 14 April, 2008  03:41:11 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT F

## Invoice Copy

**FlintGroup**

**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

Liquid Packaging Division
Lijnbaan 6
9672 BL Winschoten
The Netherlands
Mail address: P.O.Box 86
9670 AB Winschoten
The Netherlands

Phone  +31 (0) 597 416863
Fax    +31 (0) 597 420216

IC - 535

Flint Ink Winschoten B.V.

A Member of the Flint Group

ABN Amro Bank N.V.
The Netherlands

AccountNr. 62 96 08 660
IBAN Nr.   NL80ABNA0629608660
Swiftcode:: ABNANL2A

VAT Nr.   NL800287289B05

Page No          1

| | | |
|---|---|---|
| Invoice | 3594184 | Delivery Note No | 5105743/ 1 |
| Customer | 581881 | Delivery Date | 06/09/06 |
| Date | 06/09/06 | Customer Order No | 2604309 |
| | | Customer VAT No | |

| Code Description | Quantity | UOM | Price Unit | Line Net |
|---|---|---|---|---|
| WF-674-10048 | 489.000 | KG | 5.90 | |
| WAFLEX WHITE 15 WA 0010 DA/R | 1 | | | 2885.10 |
| stnr 3215.1900 | | | | |

LEVEREN: 07-09-2006

SHIP VIA AIR.
SHIP VIA YUSEN AIR & SEA

| | | |
|---|---|---|
| Commodity Code | Goods Value | 2885.10 |
| | Charges | 0.00 |
| | Taxable Total | 2885.10 |
| Country of Origin : | VAT at      % | 0.00 |
| | Amount Payable  USD | 2885.10 |

| | | |
|---|---|---|
| Total Weights | : | Net  489.000 KG    Gross   538.000 KG |
| Delivery Terms | : | Ex Works
EXW.. |
| Payment Terms | : | 30 Days from date of invoice |
| Delivery Method | : | By Ship |

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02300576
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court
(Arrondissementrechtsbank te Amsterdam). Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the uniform Sales Conditions

**E-FILED**
Monday, 14 April, 2008  03:41:28 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT G

# Invoice Copy

**Flint**Group

**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

Liquid Packaging Division

Lijnbaan 6
9672 BL Winschoten
The Netherlands
Mail address: P.O.Box 86
9670 AB Winschoten
The Netherlands

Phone  +31 (0) 597 416853
Fax    +31 (0) 597 420216

IC - 535

Flint Ink Winschoten B.V.

A Member of the Flint Group

ABN Amro Bank N.V.
The Netherlands

AccountNr. 62 96 08 680
IBAN Nr.   NL80ABNA0629608680
Swiftcode: ABNANL2A

VAT Nr.   NL800287289805

TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

Page No              1

| | | |
|---|---|---|
| Invoice | 3594879 | |
| Customer | 581881 | |
| Date | 12/10/06 | |

| | | |
|---|---|---|
| Delivery Note No | 5107358/ 1 | |
| Delivery Date | 12/10/06 | |
| Customer Order No | 26004764 | |
| Customer VAT No | | |

| Code Description | Quantity | UOM | Price Unit | Line Net |
|---|---|---|---|---|
| WF-674-10048 | 993.000 | KG | 5.90 | |
| WAFLEX WHITE 15 WA 0010 DA/R stnr 3216.1900 | 1 | | | 5858.70 |

06/10/06 leveren !!!!

SHIP VIA AIR. SHIP VIA YUSEN
AIR & SEA SERVICE

| Commodity Code | | | Goods Value | 5858.70 |
|---|---|---|---|---|
| | | | Charges | 0.00 |
| | | | Taxable Total | 5858.70 |
| Country of Origin : | | | VAT at      % | 0.00 |
| | | | Amount Payable  USD | 5858.70 |
| Total Weights | : | Net  993.000 KG | Gross  1093.000 KG | |
| Delivery Terms | : | Ex Works EXW.. | | |
| Payment Terms | : | 30 Days from date of invoice | | |
| Delivery Method | : | By Ship | | |

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02300576
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court

# Invoice Copy

# **Flint**Group

**Delivery Address**
TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

TEEPAK, LLC
915 NORTH MICHIGAN AVE
DANVILLE, IL 61832-0597

USA

Liquid Packaging Division

Lijnbaan 6
9672 BL Winschoten
The Netherlands
Mail address: P.O.Box 86
9670 AB Winschoten
The Netherlands

Phone  +31 (0) 597 416853
Fax    +31 (0) 597 420216

IC - 535

Flint Ink Winschoten B.V.

A Member of the Flint Group

ABN Amro Bank N.V.
The Netherlands

AccountNr. 62 96 08 660
IBAN Nr.  NL80ABNA0629608660
Swiftcode: ABNANL2A

VAT Nr.  NL800287289B05

Page No                 2

| | | |
|---|---|---|
| Invoice | 3594880 | |
| Customer | 581881 | |
| Date | 12/10/06 | |

Delivery Note No    5107361/ 1
Delivery Date       12/10/06
Customer Order No    **26004764**
Customer VAT No

| Code | Quantity  UOM | Price | Line Net |
|---|---|---|---|
| Description | | Unit | |

| | | | |
|---|---|---|---|
| **Commodity Code** | | Goods Value | 3184.40 |
| | | Charges | 0.00 |
| | | Taxable Total | 3184.40 |
| **Country of Origin :** | | VAT at      % | 0.00 |
| | | Amount Payable  USD | 3184.40 |

Total Weights    :    Net    125.000 KG    Gross    137.000 KG

Delivery Terms   :    Ex Works
                      EXW..

Payment Terms    :    30 Days from date of invoice

Delivery Method  :    By Ship

The goods covered by this invoice remain our property until full payment of the abovementioned invoice value has been received by us.
Commercial Register Groningen Nr. 02300576
All our deliveries are subject to the Uniform Sales Conditions for Paint & Printing Ink in the Netherlands which are filed at the Amsterdam County Court. Purchase conditions from the buyer which differ from our Uniform Sales Conditions are not accepted. See article 1 of the uniform Sales Conditions.

**E-FILED**
Monday, 14 April, 2008  03:41:44 PM
Clerk, U.S. District Court, ILCD

# EXHIBIT H

ANNEXE 3 du contrat 27 fevrier 2006

# UNIFORM CONDITIONS OF SALE AND DELIVERY FOR PAINT, PRINTING INK AND OTHER PRODUCTS

### Fifteenth edition

## Article 1. APPLICABILITY

Unless expressly agreed otherwise, these conditions apply to all quotations and contracts of sale and delivery relating to all goods and services put on the market and/or provided by the seller. Merely by placing an order the purchaser accepts the applicability of these conditions. General or specific Purchase Conditions operated by the purchaser are not accepted by the seller and do not apply to quotations, contracts and deliveries governed by these conditions, unless and after the seller (and, if the seller is a legal entity, a director of that legal entity) has expressly declared in writing that these Purchase Conditions are applicable to any specific transaction. Any such acceptance of the applicability of any such Purchase Conditions will never mean that these Purchase Conditions do or will apply to other transactions between the purchaser and the seller.

If and in so far as a quotation and/or contract between the purchaser and the seller contains clauses which differ from the quotations and/or contracts governed by these conditions without expressly ruling out the applicability of these conditions, the remaining provisions of these conditions remain in full force.

## Article 2. QUOTATIONS, ADVICE AND ORDERS

All quotations are without engagement, though this is on the understanding that the seller is bound by the net prices in its written quotations for a period of 14 days from the date of sending of the quotation in question. All prices are quoted net cash and excluding taxes payable at the time of delivery. If an order is placed without an explicit price being agreed, then the order will be fulfilled at the current price at the time, regardless of any earlier quotation or price charged earlier. For all agreed quantities, 10 % tolerance is allowed on the understanding that the purchaser is obliged to accept and pay for 10 % more or less, subject to a minimum of 1 kg or 1 litre. The seller is entitled not to accept orders, unless it is under an obligation by virtue of a quotation it has submitted. In that case it must notify the purchaser within 5 working days of receipt of the order.

## Article 3. DELIVERY

The seller has fulfilled his obligation to deliver goods by offering them to the purchaser once at the agreed time. The report of the person who arranged the transport serves as full proof of the offer to deliver if the purchaser refuses to take receipt of the goods, in which case the return freight costs, cost of storage and other necessary costs are charged to the purchaser. The offer to deliver is considered to be the same as delivery. If goods are refused, the seller will store them for 30 days after the offer to deliver and inform the purchaser in writing that the goods can be collected for cash payment. At the end of this period, the seller is entitled to sell the goods to a third party or dispose of them as it wishes.
In the case of delivery on call, if no demand period has been agreed, this will be four months with effect from the date on which the contract of sale is concluded. After four months, or after the agreed demand period, the seller is entitled to demand payment for the goods sold on call without observing any credit period.

1

ANNEXE 3 du contrat 27 fevrier 2006

## Article 4. LATE DELIVERIES

Provided the delivery is made within reasonable limits, late delivery does not give any entitlement to compensation or to dissolve the contract. However, when the contract specifically stipulates that delivery will take place on a specific date and the purchaser has informed the seller in writing that delivery may not under any circumstances be after this date, then if the agreed period passes without the goods being delivered, the purchaser is entitled to dissolve the purchase contract without judicial intervention, without prejudicing the purchaser's right to compensation, except where the seller is prevented from delivering by force majeure. The purchaser must inform the seller of its intention to do so immediately in writing. Agreed delivery dates are target dates, unless expressly agreed otherwise.

## Article 5. FORCE MAJEURE

Force majeure means: any circumstance which the seller could not have taken into account at the time of entering into the contract and as a result of which it would not be reasonable for the purchaser to demand that the contract be fulfilled in the normal way. Such circumstances include: war or threat of war, regardless of whether the Netherlands is directly involved or not; complete or partial mobilisation; a state of siege; riots; sabotage, flooding, fire or other forms of destruction at factories or warehouses and lockouts, at suppliers or producers which, for any reason whatsoever, renders them completely or partially unable to fulfil their obligations to the seller.
In the event of force majeure, the seller is entitled to dissolve the contract, without becoming liable to pay compensation.

## Article 6. ADVANCE PAYMENTS/SECURITY

The seller is entitled at any time to require the purchaser to make advance payments or to provide security before it makes a delivery or a further delivery. If the purchaser fails to make the requested advance payment or to provide the requested security, any obligation on the part of the seller to deliver goods is cancelled, without prejudicing the seller's right to compensation from the purchaser for all losses, costs and interest.

## Article 7. RETENTION OF TITLE

All goods delivered continue to be owned by the seller until the buyer has paid everything that he owes for this delivery or earlier deliveries by the seller to the buyer. The seller may demand immediate return of the goods, if the buyer has not fulfilled its obligations or if the seller has reason to believe that the buyer will not fulfil his obligations. The costs associated with returning the goods will be charged to the purchaser. When goods are returned, the purchaser will be credited based on the apparent value of the goods on return. The retention of title stipulated in this clause does not affect the fact that the risk attaching to the use and storage of the delivered goods, in the broadest sense of the word, passes to the purchaser from the moment of the actual delivery.

## Article 8. PACKAGING

Only packaging returned within six months of the invoice date, free at warehouse, that is in good condition and for which a charge was made, entitles the purchaser to reimbursement of the packaging charge. The purchaser will be informed in writing within 30 days of its receipt if packaging is being rejected, after which this packaging will be kept available for purchaser for a

© VVVF – Leiden

ANNEXE 3 du contrat 27 fevrier 2006

week, at the end of which the seller is free to dispose of the packaging without becoming liable to pay any compensation. The seller will not take back packaging that is not charged for as a separate item on the invoice.

## Article 9. INTELLECTUAL PROPERTY RIGHTS

The seller reserves the right to place its own name and trademark on the goods. The purchaser recognises that the intellectual property rights (copyright, patent rights, trademark rights, trade name rights etc.) relating to goods sold by the seller or other items provided by the seller, such as technical information sheets, advertising material etc., are vested in the seller, or in one of the companies of the group to which the seller belongs. The buyer will respect these rights and is obliged to conduct himself in accordance with the seller's instructions with regard to these matters. If the buyer discovers that one or more third parties have infringed the intellectual property rights referred to in this clause, the buyer has an obligation to inform the seller immediately. The buyer is not permitted to use any trademark or other distinguishing mark belonging to the seller as, or as part of, an internet domain name or alphanumeric telephone number. The purchaser gives the seller permission to enter all information concerning the sale and other information provided by the purchaser in a database and to use the information in the database. All rights to this database are vested in the seller.

## Article 10. COMPLAINTS

1.      Complaints of any nature whatsoever do not defer the purchaser's payment obligation, and complaints can only be made to the seller in writing within the time limits set out in this clause.

2.      No complaint is allowed if the purchaser has processed or re-sold the goods, when a simple check on the part of the purchaser could have established the alleged defect. No complaint is allowed on the grounds of technically unavoidable differences in colour and properties.

3.      Complaints relating to delivery shortfalls, incorrect appearance, weights or quantities, or complaints about packaging and the price charged can only be made within 14 days of the delivery of the goods.

4.      Complaints about the quality of the delivered goods may only be made within 14 days of the purchaser discovering that the goods are faulty, and in any case never more than six months after the delivery of the goods. If a best-before date less than six months away is given on the packaging, any complaints must be submitted before that date.

5.      The purchaser can only demonstrate that paint products supplied are faulty by submitting a report from the most appropriate section of the TNO (Netherlands Organisation for Applied Scientific Research); all other forms of evidence are ruled out. The cost of having the report produced are charged to the party which is found to be in the wrong. There are no binding rules of evidence for any other products.

6.      The purchaser may use any means to demonstrate that printing inks supplied are faulty, on the understanding that the products will only be deemed to be faulty if they do not meet seller's current specification(s) for the product.

3

© VVVF – Leiden

ANNEXE 3 du contrat 27 fevrier 2006

7.    The compensation for which the seller can be held liable for the delivery of faulty goods, for documentation, processing advice and other advice, supervision and inspection, will never exceed 3 ½ x the invoice amount for delivered goods which have been found to be faulty. The seller is never liable for any form of consequential loss, whatever it is called and however it is caused.

8.    The burden of proof that the goods to which the complaint relates are the same as the goods supplied by the seller rests upon the purchaser.

Article 11.  PAYMENTS

1.    Except where stipulated otherwise, the purchaser must pay the invoices in full within 30 days of the invoice date. Payments cannot be set off against any claims against the seller.

2.    If the invoice amount explicitly includes a late payment surcharge, this is deemed to be part of the invoice amount and may only be deducted if the rest of the invoice amount is paid within 30 days of the invoice date.

3.    If the purchaser does not pay the amount due on the invoice on time, he will be charged interest at 1 ¼ % of the invoice amount for each month or part month by which the payment deadline is exceeded. If at any point in time the statutory interest under article 6: 119 a. of the Dutch Civil Code is higher than the interest due under this interest clause, the seller is entitled to demand the interest due under article 6: 119 a. of the Dutch Civil Code, so the interest payable will be calculated by the method set out in that article.

4.    Only payments made by the method specified by the seller are valid. The seller is free to deduct payments it receives from outstanding costs, interest due and the oldest outstanding invoices, even if the purchaser has indicated that a payment is intended to write off a particular invoice or if the amount transferred makes clear that the purchaser intended it to pay a particular invoice.

5.    If the purchaser is in default by exceeding a payment deadline, the seller is entitled to recover the amount due at law, without any further demand for payment being required. The seller has the right to dissolve all contracts concluded with the purchaser, if the purchaser fails to fulfil his contractual obligation with the seller, if the purchaser has been granted a suspension of payments or if the purchaser is declared bankrupt.

6.    In addition to the amount due, the seller is entitled to claim from the purchaser all costs caused by the purchaser's non-payment, both court costs and extrajudicial collection charges.

7.    Extrajudicial collection charges are payable by the purchaser whenever the seller has engaged the help of a third party to ensure collection. These charges amount to 12 % of the amount owing, being the invoice amount plus interest due under subclause 3 of this clause, with a minimum charge of € 11.50. If the purchaser pays the principal sum, plus the interest due and extrajudicial collection charges within 14 days of being sent a demand for payment in writing by a third party charged with the collection by the seller, then the extrajudicial collection charges will be 5 % of the amount owing, being the invoice amount plus interest due under subclause 3 of this clause, with a minimum charge of € 11.50.

8.    The seller is not under an obligation to demonstrate that its expenditure on extrajudicial collection charges has fallen due. If the seller petitions for the bankruptcy of the buyer, the latter

4

ANNEXE 3 du contrat 27 fevrier 2006

is liable for the costs of the petition for bankruptcy in addition to the amount owing and the associated court costs and extrajudicial charges.

Article 12.  DISPUTES

Unless the parties have subjected their disputes to arbitration, all disputes (including interim injunction proceedings and requests for attachment orders) which may arise between the parties in connection with these Uniform Conditions of Sale and Delivery or in connection with later agreements, will only be adjudicated by the district court in whose area of jurisdiction the seller is established, in so far as the dispute is within the competence of the district court and the law has not declared another court competent by mandatory rules of law. All disputes will be settled in accordance with Dutch law.

© VVVF – Leiden